William C. WITHERSPOON, Plaintiff,

v.

Allyn R. SIELAFF, Director of the Illinois Department of Corrections et al., Defendants.

No. 75 C 0644.

United States District Court, N. D. Illinois, E. D.

Feb. 3, 1981.

Kathleen J. Purcell and Robert L. Graham, Jenner & Block, Chicago, Ill., for plaintiff.

Bernard Carey, State's Atty., William J. Scott, Atty. Gen., Melbourne A. Noel, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

In January, 1976, William Witherspoon received a favorable judgment on his civil rights complaint, granting him declaratory and injunctive relief. Subsequently, Witherspoon moved for an order to show cause and a contempt judgment against several defendants for violation of the order. In that proceeding, Witherspoon was represented by attorneys from the law firm of Jenner & Block. Mr. Witherspoon was again successful in his litigation, as several defendants were held in civil contempt by order dated March 6, 1978. The matter is now before the Court on Witherspoon's petition for attorney's fees and costs.

This Court clearly has discretion to award attorney's fees as costs under 42 U.S.C. § 1988, because the contempt pro-

ceeding was brought to enforce a judgment order issued under 42 U.S.C. § 1983. This discretion is not precluded by the eleventh amendment even though the fee would ultimately come from the state treasury. *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Bond v. Stanton*, 630 F.2d 1231, 1232 n. 2 (7th Cir. 1980). Furthermore, "the trial court's discretion is narrow; ... a prevailing plaintiff should receive fees almost as a matter of course." *Dawson v. Pastrick*, 600 F.2d 70, 79 (7th Cir. 1979). It is only when special circumstances render an award unjust that fees should be denied. *Id.*

■ Recognizing these standards, the defendants argue that special circumstances exist in this case. They contend that fees should be denied because Witherspoon's attorneys are from a large law firm that has provided and will provide services pro bono publico regardless of the availability of an eventual fee award, while the Illinois Department of Corrections suffers budgetary limitations. Simply stated, the defendants contend that "the Department of Corrections needs the money more than does the firm of Jenner and Block. The public interest is better served now by not depriving the Department of any of its desparately needed funds." (Response In Opposition, p. 3). The defendants even go one step further, apparently contending that Witherspoon's attorneys have some burden of persuasion in this matter: "Jenner and Block could not demonstrate that its ability to work *pro bono publico* for essentially indigent prisoner clients would be significantly reduced by a failure to obtain fees of the type requested here." (Response In Opposition, p. 5).

These contentions represent a serious misunderstanding of the purposes of a § 1988 award and are particularly inappropriate in this case where only $2,423.79 is sought.

■ Certainly an important purpose of the Civil Rights Attorney's Fees Awards Act of 1976, amending 42 U.S.C. § 1988, is to encourage private enforcement and vindication of civil rights by providing recov-

ery of all costs. S.Rep.No.94–1011, 94th Cong.2d Sess. 2, *reprinted in* [1976] U.S. Code Cong. & Ad.News 5908, 5910; *see Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). Arguably this legislative purpose played no role here for counsel accepted appointment without exacting a fee from Mr. Witherspoon. However, the Supreme Court has expressly recognized that the Awards Act also has an important deterrent purpose: "the potential liability of § 1983 defendants for attorney's fees ... provides additional—and by no means inconsequential—assurance that agents of the State will not deliberately ignore [constitutional] rights." *Carey v. Piphus*, 435 U.S. 247, 258 n. 11, 98 S.Ct. 1042, 1049 n. 11, 55 L.Ed.2d 252 (1978). Thus, there would be no inconsistency with legislative purpose by awarding fees as a deterrent, particularly in a case where the defendants have violated a specific order of the Court.

■ Additionally, as another court recognized, Congress surely was aware that many civil rights actions are accepted by attorneys pro bono publico and commenced without expectation of compensation from the client. Yet there is no limitation in § 1988 that fees be awarded only when counsel has charged the client. Fees would not be granted "almost as a matter of course" if that were the requirement. *See Keyes v. School Dist. No. 1, Denver Colo.*, 439 F.Supp. 393, 407 (D.Colo.1977).

■ Furthermore, Jenner & Block should not be penalized for its past and continued acceptance of pro bono work, while other attorneys might pursue civil rights suits only because of the possibility of compensation. In any event, if a successful plaintiff's ability to pay a fee is not a special circumstance barring an award, *Bunn v. Central Realty of Louisiana*, 592 F.2d 891 (5th Cir. 1979), then a successful plaintiff's counsel's ability to absorb the costs of a lawsuit should not be a special circumstance either. Congress did not intend that vindication of statutorily guaranteed rights would depend on the private party's eco-

nomic resources or on the availability of free legal assistance. The ability to pay is irrelevant; all that is required is the existence of an attorney-client relationship. *Gore v. Turner*, 563 F.2d 159, 163–64 (5th Cir. 1977).

Moreover, the defendant's financial limitations are not determinative on this issue. Similar arguments were presented by municipal officials to the Seventh Circuit in *Entertainment Concepts, Inc., III v. Maciejewski*, 631 F.2d 497 (7th Cir. 1980). The court dismissed the contentions, first stating that ability or inability to pay is not a special circumstance that will bar an award and then noting that the fee would come from the municipal treasury anyway. 631 F.2d at 507. In addition, any argument that the disbursement of public monies for fee awards is an inappropriate method of funding the enforcement of civil rights was implicitly rejected by Congress. The Senate Report expressly anticipated that fees would be paid from state and local governments. S.Rep.No.94–1011, 94th Cong., 2d Sess. 5, *reprinted in* [1976] U.S.Code Cong. & Admin.News 5908, 5913. Further, even the fact that counsel might already be receiving public aid through a government-funded or tax exempt organization has been rejected as a "special circumstance" barring an award. *See, e. g., Cole v. Tuttle*, 462 F.Supp. 1016, 1019 (N.D.Miss.1978); *Schmidt v. Schubert*, 433 F.Supp. 1115, 1117–18 (E.D.Wis.1977).

There is simply no basis in the statute, legislative history or caselaw for the defendants' argument here. Pro bono services by members of the Bar provide an invaluable service to the less fortunate in our society and, thereby, to society as a whole. Congress clearly intended to encourage this tradition of service in the field of civil rights enforcement. Thus, even though individual attorneys or law firms may have the financial resources to absorb the costs of pro bono services, they are entitled to a fee award to encourage future service by them and promote greater respect for our civil rights by all.

Accordingly, the request being reasonable in terms of time spent and hourly rate, the petition for fees and costs is granted.