**BOARD OF EDUCATION OF FREDERICK COUNTY,**

v.

**I.S., a minor, by her parents and next friends, Steven and Kelli SUMMERS, et al.**

**No. CIV.A.RDB 02–3759.**

United States District Court,
D. Maryland,
Northern Division.

Jan. 14, 2005.

Jeffrey A. Krew, Jeffrey A. Krew Attorney at Law, Columbia, MD, for Plaintiff.

Harold L. Segall, Bret Coleman Cohen, Thomas Alan Blaser, Beveridge and Diamond PC, Washington, DC, Pamela D. Marks, Beveridge and Diamond PC, Baltimore, MD, Anna Jenefsky, Law Office of Anna Jenefsky, Bethesda, MD, for Defendant.

## MEMORANDUM OPINION

BENNETT, District Judge.

Pending before the Court is a Motion for Attorneys' Fees filed by Defendant I.S., a minor, and her parents, Steven and Kelli Summers (the "Summers" or "Defendant"), pursuant to the fee-shifting provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3) (2004). Also pending before this Court is Plaintiff Frederick County Public Schools' ("FCPS") Motion to Strike certain statements in the Summers' Reply to their Motion for Attorneys' Fees on the grounds that the "statements are not supported by the record or that they are not being presented for any proper purpose." (Def.'s Motion to Strike at 1.) The matters have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D.Md. 2004).

The Summers' Motion for Attorneys' Fees comes at the end of a case that has an extensive history, which was described in detail in this Court's Memorandum Opinion on the parties' cross motions for summary judgment. *See Board of Education of Frederick County v. I.S., a minor, by her parents and next friends, Steven and Kelli Summers,* RDB 02–3759 (May 6, 2004). In this IDEA action, FCPS filed an appeal in this Court of an October 17, 2002 due process hearing decision by Administrative Law Judge Alan B. Jacobson of the Maryland State Office of Administrative Hearings ("ALJ Jacobson"). ALJ Jacobson ordered FCPS to fund a placement in a private school for I.S., a multiply-disabled child, for the remainder of the 2002–2003 school year. On appeal to this Court, both parties filed motions for summary judgment and, on May 6, 2004, this Court denied FCPS's Motion for Summary Judgment and granted the Summers' Motion for Summary Judgment and, in doing so, upheld the decision of ALJ Jacobson.

The Summers now seek to recover a total of $236,557.37 in costs and attorneys fees for representation related to the IDEA due process hearing and the unsuccessful appeal initiated by FCPS in this Court. (*See* Def.'s Reply at 3 n. 4.) These fees reflect professional services rendered by Anna Jenefsky, Esq., who primarily represented the Summers relating to the due process hearing, and various attorneys at Beveridge & Diamond, P.C., the firm that acted as lead counsel during FCPS's appeal. FCPS objects to the amount of attorneys' fees sought by the Summers, alleging that certain of the attorneys' rates are excessively high given their level of experience in IDEA cases and that the time spent on the matter was excessive. FCPS also objects to certain costs sought by the Summers, including fees paid to experts retained by the Summers.

For the reasons set forth below, the Summers' Motion for Attorneys' Fees is GRANTED, to the extent of $196,353 in attorneys' fees and $20,842.12 in costs, and FCPS's Motion to Strike is MOOT.

## I.   FCPS's Motion to Strike

FCPS seeks to have stricken four statements in the Summers' Reply Memorandum In Support of Motion for Attorneys' Fees ("Reply") because they "are not supported by the record or that they are not being presented for any proper purpose." (Mot. to Strike at 1.) These four statements are:

- "Plaintiff has failed to present any evidence whatsoever of the market rate . . . , or of appropriate hourly rates for attorneys with experience comparable to that of the B & D's." (Reply at 5.);
- "FCPS counsel have withheld in [sic]Court-ordered discovery information that would be important in making [a comparison between the rates charged by FCPS counsel and the

rates charged by the Summers' counsel], such as their retainer agreements with FCPS (they claim there are none), and their fees and costs associated with their lengthy opposition to the fee request." (Reply at 5 n. 7.);

- Exhibit 5 to the Reply brief, which is a letter from the Honorable L. Bennett to Jeff Krew; and
- Any references to settlement negotiations between FCPS and the Summers (Reply at 18–19.).

The Court did not rely upon any of these statements nor the Exhibit referenced by FCPS in deciding the Summers' Motion for Attorneys' Fees and, therefore, the Motion to Strike these items is moot.

*II. Summers' Motion for Attorneys' Fees*

■ The fee shifting provision of the IDEA provides that: "Award of attorneys' fees—In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C.A. §§ 1415(i)(3)(B). In a civil rights action, the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) stated that a litigant is a prevailing party for purposes of an attorney's fees award "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 433, 103 S.Ct. 1933. In *Hensley* the Supreme Court also stated that "[a] request for attorney's fees should not result in a second major litigation." 461 U.S. at 437, 103 S.Ct. 1933. The battle over attorneys' fees and costs in this case evidences this precise problem in that there are extensive briefs, exhibits, and even a motion to strike certain statements in Defendant's Reply. It is within the district court's sound discretion to determine the amount of a fee award. *See id.* This Court has spent considerable time wading through the parties' voluminous submissions, which have bordered on a "second major litigation." *See id.*

■ After a district court has determined that a litigant is a prevailing party for purposes of an attorney's fees award, the district court must assess an appropriate fee by calculating the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.* at 436, 103 S.Ct. 1933. The Fourth Circuit has adopted twelve factors, sometimes referred to as the *Johnson* factors, for courts to consider when determining a reasonable attorneys' fee award. *See A.D. v. Board of Public Educ. of the City of Asheville,* 99 F.Supp.2d 683, 687 (W.D.N.C.1999) (recognizing that the twelve factor test originally set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974) is "well settled law in the Fourth Circuit."); *E.E.O.C. v. Service News Co.,* 898 F.2d 958 (4th Cir.1990). These twelve *Johnson* factors are: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) at-

torneys' fees awards in similar cases. *See id.* at 965.

A. *The Degree to Which the Summers Were a Prevailing Party at the Administrative Due Process Hearing and at the District Court Level*

The first of many disagreements between the parties occurs over the degree to which the Summers were "prevailing parties" in the administrative hearing. The Summers argue that ALJ Jacobson's decision provided the primary relief they sought from their request for a due process hearing and, therefore, they should be considered a prevailing party for purposes of collecting Ms. Jenefsky's attorney's fees. FCPS contends that the Summers were not 100% successful at the due process hearing because they did not obtain all of the relief they requested. More specifically, FCPS argues that, although ALJ Jacobson directed the Board to fund IS' private school placement at a non-public school for the remainder of the 2002–2003 school year, he denied the parents' request for compensatory educational services for the 2000–2001 and 2001–2002 school years, which related to expenses incurred for home-schooling. FCPS contends that a 2/3 or 66% fee reduction is appropriate based on the partial success. (Pl.'s Resp. at 25.)

■ When an unsuccessful claim is distinct in all respects from a successful claim, the time spent by the party's attorney on the unsuccessful claim should not be included in an award for reasonable attorney's fees. *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933. In some cases it may be difficult to clearly separate the successful claims from the unsuccessful. Here, the Court is aided by the clear delineation of requests concerning different academic years. While the Summers were successful in obtaining funding from FCPS for an appropriate placement for IS in a non-

public school, they were not successful in obtaining compensatory education services for both the 2000–2001 and 2001–2002 school year. However, there were common core facts and related legal theories to all three school years. *See Hensley*, 461 U.S. at 435, 103 S.Ct. 1933.

■ A district court must "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. The significance of the overall relief obtained—funding from FCPS for I.S.' placement at an appropriate non-public school—was very significant. In addition, Ms. Jenefsky stated that she did not spend any additional time preparing for the compensatory education services request and that her preparation time for the case would not have differed even if the Summers decided not to pursue this request. (Def.'s Reply, Anna Jenefsky Decl. ¶ 3–4.) Some adjustment of Ms. Jenefsky's fees are appropriate to reflect that the Summers were not 100% successful at the administrative hearing level. However, based on the significant overall relief obtained in relation to the hours reasonably expended, the adjustment should not be close to the 66% reduction suggested by FCPS and, instead, should be quite small. The Court will reduce Ms. Jenefsky's fees, which are discussed in more detail below, related to the representation of the Summers in the due process hearing by 10%.

■ The Summers were the prevailing party in the appeal initiated by FCPS in this Court, as the Court granted the Summers' Motion for Summary Judgment and upheld ALJ Jacobson's decision that FCPS was required to fund IS' non-public school tuition for the remainder of the 2002–2003 academic year. *See Board of Education of Frederick County v. I.S., a minor, by her parents and next friends,*

*Steven and Kelli Summers,* RDB 02–3759 (May 6, 2004). Furthermore, Beveridge & Diamond is not precluded from receiving a statutory fee award because it accepted the Summers' case on a *pro bono* basis. The Fourth Circuit stated in *Brinn v. Tidewater Transp. Dist. Comm'n,* 242 F.3d 227 (4th Cir.2001) that "entities providing *pro bono* representation may receive attorney's fees where appropriate, even though they did not expect payment from the client and, in some cases, received public funding." *Id.* at 234–235 (citing *Blum v. Stenson,* 465 U.S. 886, 893–95, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)).[1] Therefore, an award of attorneys' fees in this case is both permissible and warranted.

### B. *Reasonable Attorneys' Fees*

The Summers argue that Beveridge & Diamond has exercised billing discretion, considering, among other factors, the public nature of the FCPS, and has voluntarily reduced both its billing rates and the amount of time billed to this matter. While Beveridge & Diamond attorneys and paralegals spent over 1,750 hours on this matter, recovery for less than 50% of those hours, amounting to 818.5 hours, is being sought. (Def.'s Mot. at 6.) Ms. Jenefsky spent 284.4 hours on this matter, which includes time spent on her representation of the Summers related to the due process hearing. FCPS argues that the hourly rates charged by the Summers' counsel are not reasonable and exceed the prevailing market rate and that the hours expended by the Summers' counsel are unreasonable. (Pl.'s Resp. at 5.) Applying the *Johnson* factors adopted by the Fourth Circuit, the Court will first determine the reasonable amount of hours expended and then determine reasonable hourly fees for the services performed.

#### 1. Reasonable Amount of Hours Expended

To assess the number of reasonable hours for which the Summers' counsel should appropriately be compensated, the Court considers a number of the *Johnson* factors, including the novelty and difficulty of the questions raised, the skill required to properly perform the legal services rendered, the experience, reputation and ability of the attorneys, the attorneys' opportunity costs in pressing the instant litigation, and the results obtained. In addition, the Court is guided by the Local Rules of this Court ("Local Rules"), which in Appendix B, provide rules and guidelines for determining lodestar attorneys' fees in civil rights and discrimination cases, and cases brought under the IDEA.

■ The Summers' attorneys seek fees for 284.4 hours of work performed by Ms. Jenefsky, which includes time spent on both the due process hearing and the district court appeal, and 818.5 hours of work performed by attorneys and paralegals at Beveridge & Diamond, who were the primary attorneys representing the Summers for the appeal before this Court. FCPS argues that the amount of hours that the Summers' attorneys, in particular those at Beveridge & Diamond, spent on this matter were:

"unreasonable, grossly excessive, and duplicative—which is reflective of inexperienced attorneys who assumed responsibility for litigation of a routine IDEA appeal, yet spent hours learning the law, consulting amongst themselves, constantly conferring with the attorney [Ms. Jenefsky] who originally tried the

1. In the retainer agreement between the Summers and Beveridge & Diamond, it states that Beveridge & Diamond will represent the Summers on a *pro bono* basis, but that the Firm may seek recovery of its legal fees and costs from the FCPS. (*See* Pl.'s Resp. Ex. 2.)

due process hearing to seek her advice and/or approval of every single action they took in the case, spending hundreds of hours conducting unnecessary or duplicative research, reading and re-reading the administrative record again and again, and preparing and filing non-dispositive motions which were consistently denied by this Court." (Pl.'s Resp. at 5–6.)

After reviewing the record before the Court and, in light of the outcome in this case, this Court finds that the time expended by Beveridge & Diamond and Ms. Jenefsky was reasonably expended in the representation of their client, with the exception of a few minor instances noted below.

FCPS contends that this was a simple appeal from a due process hearing and that the "inexperience" of the attorneys at Beveridge & Diamond in this area of the law resulted in an excessively large amount of time spent on this matter. FCPS seems to ignore that Beveridge & Diamond carefully analyzed the hours billed by their attorneys and paralegals and the firm determined that it would not seek to recover over 800 hours of time spent on this matter, including time that attorneys at the firm spent becoming more familiar with IDEA law. Beveridge & Diamond exercised the very type of billing judgment directed by the Supreme Court in *Hensley*. *See Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. The Court does not believe that Beveridge & Diamond has tried to reap a "windfall" at "the expense of the public school system[ ]" as FCPS suggests, when it has exercised billing discretion and suggested a rate reduction of its hourly charges, which will be addressed in more detail below. (Pl.'s Resp. at 11–12.)

One of the *Johnson* factors directs the Court to consider the attorneys' opportunity costs in pressing the instant litigation. Certainly, Beveridge & Diamond ex-

pended resources on this matter, which was accepted on a *pro bono* basis, that could have been used for clients paying higher fees than are being requested in the Summers' motion. FCPS, however, cites *Alexander S. v. Boyd*, 929 F.Supp. 925 (D.S.C.1995) where the court reduced the applicant's request for attorneys' fees by 10% because there was duplication caused by the involvement of a large number of attorneys. *See id.* at 943. In *Alexander S.*, the submission for fees indicated that twelve attorneys worked on the matter and that the number of attorneys was perhaps larger than normal because the firm used the matter to provide some of its associates with an opportunity to work on a *pro bono* case and to gain in-court experience. *See id.* In this case, Beveridge & Diamond had six attorneys staffed on the matter, with two of the attorneys working solely on the preparation of the motion for attorneys' fees. In addition, as discussed above, Beveridge & Diamond exercised discretion by choosing not to seek all of the hours billed to this matter and reviewed the hours billed to identify and exclude any duplicative work.

The Court has reviewed the detailed chart created by FCPS, noting its objections to certain time entries requested by the Summers' counsel, as well as the chart included with the Summers' Reply, defending the necessity of those particular entries. (*See* FCPS' Resp. Ex. 7 & 8, Summers' Reply Ex. 2.) The Court notes only one entry that should be excluded from the hours used to calculate a reasonable fee award in this case. The Court finds that the three and one quarter hours expended by Mr. Damelin, to review the administrative record, was duplicative and, therefore, should be excluded.

When FCPS decided to appeal the outcome of the due process hearing to this Court, the Beveridge & Diamond attor-

neys' general litigation experience in federal litigation became relevant and FCPS's repeated references to the Summers' attorneys' inexperience is misplaced.[2] *See generally I.B. v. New York City Dep't of Educ.*, 336 F.3d 79, 81 (2d Cir.2003) (stating "it is entirely obvious that most important legal skills are transferable.") Another *Johnson* factor, also addressed by the Supreme Court in *Hensley*, is the result obtained by the party applying for attorneys' fees. The result obtained at the conclusion of the appeal before this Court was significant. The Court upheld ALJ Jacobson's decision requiring FCPS to fund a non-public education for IS for the remainder of the 2002–2003 school year because FCPS's Individualized Education Program ("IEP") failed to offer I.S. the Free Appropriate Public Education to which she was entitled.

FCPS further argues: 1) that hours spent on unsuccessful motions must be deducted; 2) that hours billed prior to the execution of a retainer agreement should be deducted; 3) that time spent on intra-office conferences should be reduced; and 4) that Beveridge & Diamond's practice of billing in quarter-hour increments, instead of tenth-hour increments should result in a reduction of hours billed.[3] (Pl.'s Resp. at 22–23.)

### a) Hours Spent on Unsuccessful Motions

FCPS argues that the 59 hours spent by Beveridge & Diamond (6.5 by Harold Stegall & 52.5 by Thomas Blaser) preparing an unsuccessful Motion to Strike Plaintiff's Expert Witness should be deducted from an award for attorneys' fees. The Summers highlight that FCPS did not cite any case law authority for its argument and assert that there is authority supporting that hours spent on unsuccessful motions by a prevailing party can be recoverable. *See Blum v. Witco Chem. Corp.*, 829 F.2d 367, 378 (3d Cir.1987) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The Court finds that the time spent on the Summers' Motion to Strike Plaintiff's Expert Witness is not *per se* unrecoverable in this case because it was unsuccessful. However, the time spent on this motion was excessive in light of the nature of the motion. Therefore, the Court will reduce the recoverable time spent by Harold Stegall by 2.5 hours, to 4 hours, and the recoverable time spent by Thomas Blaser by 22.5 hours, to 30 hours.

### b) Hours Billed Prior to Retainer Agreement

FCPS seeks to have excluded a total of 38.9 hours of work performed by Ms. Jenefsky and Beveridge & Diamond prior to the execution of a retainer agreement with the Summers. The parties cite opposing case law on this issue. FCPS cites *E.M. v. Millville Bd. Of Educ.*, 849 F.Supp. 312, 317 (D.N.J.1994), in which the court held that 2.1 hours of work performed prior to the execution of the retainer agreement was unrecoverable in a request for fees. The Summers cite *Kunzler v. Rubin,* 2001 WL 34053243, *15 (D.Ariz. Sept.27, 2001), in which the court awarded the prevailing party for 23 hours of work performed before the execution of a retainer agreement. The Summers also cite the Model Rules of

---

**2.** FCPS does not question Ms. Jenefsky's experience in IDEA matters.

**3.** FCPS also argues that the Summers' seek to recover 13 hours that were spent by counsel on matters relating to I.S.' Individualized Education Program ("IEP") meeting, which is specifically not allowed under the IDEA, pursuant to 20 U.S.C. 1415(i)(D)(ii). In the Summers' Reply brief, they indicated that they were reducing their fee request by $2,920.00 due to the inadvertent inclusion of fees related to any IEP meetings.

Professional Conduct, which provide that "[w]hen the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing before or within a reasonable time after commencing the representation." Model Rules of Prof'l Conduct 1.5(b). This rule is to ensure that a client understands the terms of the representation. Both retainer agreements were signed by the Summers less than a month after their attorneys began expending time on the matter, which appears to be reasonable in this case in light of the fact that the attorneys were faced with immediate deadlines. Accordingly, the Court does not believe that there is a need to depart from the general practice of collecting for hours billed prior to the execution of a formal retainer and, therefore, the 38.9 hours will not be excluded from the fee request.

### c) Intra–Office Conferences

FCPS argues that, pursuant to the Local Rules, Appendix B, time should be deducted from the Summers' request because multiple attorneys billed for intra-office conferences. FCPS further contends that conferences between Beveridge & Diamond attorneys and Ms. Jenefsky, for which each billed under 10 hours, should be considered "intra-office" conferences. The Court need not determine whether conferences between Beveridge & Diamond and Ms. Jenefsky should be considered intra-office conferences, however, because the Local Rules permit compensation to be "paid for the attendance of more than one lawyer at periodic conferences of defined duration held for the purpose of work organization and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation." Local Rules, Appendix B. While the Local Rules state that generally only one lawyer is to be compensated for intra-office conferences, Beveridge & Diamond has already examined its bills to exclude these types of conferences and only seeks to recover those permitted by the Local Rules. Therefore, there will be no reduction of hours for the remaining time requested for attorney conferences.

### d) Billing Increments

■ FCPS argues that Beveridge & Diamond's practice of billing in quarter-hour increments, instead of tenth-hour increments, resulted in excessively high bills because even a very short phone call lasting only a few minutes, for example, would be billed at fifteen minutes. Beveridge & Diamond answers that its attorneys are instructed to round time down to the nearest quarter of an hour and that a number of prominent Washington, D.C. firms also use this billing practice. Similarly, however, a number of prominent Washington, D.C. firms do not use this practice and account for time in tenth-hour increments. Beveridge & Diamond notes that sometimes it, along with the other D.C. firms listed in Mr. Segall's Declaration, (Segall Reply Decl. ¶ 12.), bill in tenth-hour increments based on the client. More importantly in this matter, in which a firm representing a client on a *pro bono* basis now seeks to recover attorneys' fees from a public school system, the most precise billing approach possible should be utilized to ensure the utmost degree of accuracy. Although the Court certainly recognizes that Beveridge & Diamond has already taken care to reduce the amount of attorneys' fees requested, the Court finds that a 5% reduction, to be taken after any other adjustments described above, should be applied to ensure fairness.

### 2. Reasonable Hourly Rates

There is also contention among the parties regarding the hourly attorney rates indicated in the Summers' submission. The IDEA states that fees "shall be based on rates prevailing in the community in

which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection." 20 U.S.C. § 1415(i)(3)(C) In addition, the Court is guided by the lodestar rates listed in Appendix B to the Local Rules, although, as the Local Rules indicate, relevant case law governs. The Court is also guided by certain of the *Johnson* factors, including the customary fee for like work and attorneys' fees awards in similar cases.

■■■■ FCPS concedes that Ms. Jenefsky's rate of $200 an hour is appropriate based on her IDEA expertise and years of experience. (Pl.'s Resp. at 9.) FCPS, however, argues that the hourly rates for Beveridge & Diamond attorneys and paralegals should be below the lodestar rates included in the Local Rules for two main reasons: 1) because of their lack of experience in special education law, and 2) because Beveridge & Diamond agreed to represent the Summers on a *pro bono* basis. The Court has already noted that Beveridge & Diamond is a reputable firm with attorneys capable of handling this representation and that the firm appropriately discounted time spent on becoming familiar with IDEA law. Second, as noted above, the Fourth Circuit has held "that entities providing *pro bono* representation may receive attorney's fees where appropriate ...." *Brinn,* 242 F.3d at 234 –235.

Therefore, the fact that Beveridge & Diamond accepted the Summers as clients on a *pro bono* basis does not prohibit the firm from receiving reasonable attorneys fees.

The Court, however, does not believe that Beveridge & Diamond's fees should exceed the upper range of lodestar rates included in the Local Rules. The IDEA provision addressing rates states that they must be based on the rates prevailing in the community in which the action or proceeding arose. Although the action first arose in Frederick County, the proceeding appealing the administrative due process hearing arose in this Court, sitting in Baltimore, Maryland. The prevailing rates in the Baltimore community are generally lower than those in Washington, D.C. Although, as the Summers note, a court may award hourly rates above those recommended by the Local Rules, this Court is not persuaded to do so in this case. *See Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (explaining that an upward adjustment to an attorney's fee may be appropriate in federal civil rights action, even though it was not appropriate based on the record before the Court in this matter). Therefore, the Court will use the rate range provided in the Local Rules for guidance to determine an appropriate rate for the attorneys in this case. The chart below summarizes the parties' positions on each attorney's hourly rate and the Court's rate determination.

| Name & Years Practiced | Standard Rate | Rate Requested by the Summers | Rate Suggested by FCPS | Local Rules Lodestar Range | Court's Rate Determination |
|---|---|---|---|---|---|
| Anna Jenefsky (8+ years) | 200 | 200 | 200 | 200–275 | 200 |
| Harold Segall (8+ years) | 375 | 315 | 150 | 200–275 | 275 |
| Daniel Krainen (5–8 years) | 175–285 | 190 | 130 | 150–225 | 190 |
| Scott Damelin | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| (5–8 years) | 175–285 | 190 | 130 | 150–225 | 190 |
| Thomas Blaser (5–8 years) | 175–285 | 190 | 125 | 150–225 | 190 |
| Elizabeth Richardson (0–5 years) | 175–285 | 190 | 115 | 135–170 | 170 |
| Brett Cohen (0–5 years) | 175–285 | 190 | 115 | 135–170 | 170 |
| S. Dalai (paralegal) | unknown | 190 | 75 | 90 | 90 |
| D. Rosen (paralegal) | unknown | 120 | 75 | 90 | 90 |

## C. *Costs*

██ The Summers seek to recover $10,874.82 in costs spent by counsel, which is less than the more than $15,000 in costs actually incurred during the representation of the Summers in the due process hearing and the district court action. The Summers seek to recover $740.41 in costs incurred by Ms. Jenefsky and $10,134.41 in costs incurred by Beveridge & Diamond. These costs include expenses such as photocopying, postage, expert witness fees, and online research. FCPS contends that the Summers are not entitled to recover certain costs, such as online research charges and expert witness fees.

The Local Rules, in Appendix B, permit for the recovery of "reasonable out-of-pocket expenses" including online research. FCPS argues that because Beveridge & Diamond is a large firm that likely has a contract with online legal research providers, the research costs are not properly recoverable. Beveridge & Diamond's regular practice, similar to many firms, is to bill these costs to clients and the Local Rules permit reimbursement for this type of expense. Therefore, these costs will not be excluded. The Summers are entitled to recover $6,127.56 in costs incurred by Beveridge & Diamond and $740.41 in costs incurred by Ms. Jenefsky. The additional $4,006.85 requested by the Summers for fees paid by Beveridge & Diamond to an expert witness is addressed below.

The Summers seek to recover $13,974.15 in expert witness and consulting fees. The Summers directly paid $9,967.30 to two experts: 1) $7,867.30 to Dr. Sheila C. Iseman, an expert witness at the due process hearing, and 2) $2,100.00 to Dr. Susan Van Ost, an expert consultant whose report helped the Summers decide to challenge I.S.' placement for the 2002–2003 academic year. (Def.'s Mot. at 11.) Dr. Iseman, was also paid $4,006.85 of her total fee through disbursements made by Beveridge & Diamond.

As noted above, the fee shifting provision of the IDEA states that the court "may award reasonable attorneys' fees *as part of the costs* to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B) (emphasis added). Costs are not defined under the IDEA. The Summers argue that these expert fees are recoverable as reasonable litigation expenses under the IDEA. *See generally Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir.1986) ("The great weight of authority in this circuit and others clearly establishes that a prevailing plaintiff is entitled to compensation for reasonable litigation expenses" in civil rights cases). Whether expert fees can be recovered under the fee shifting provision of the IDEA is unclear and the Fourth Circuit has yet to reach this issue. Indeed, two Judges of this Court have reached different conclusions on this precise question.

In *Mayo v. Booker*, 56 F.Supp.2d 597 (D.Md.1999), Judge Motz stated in dictum that "expert witness fees are not recoverable under the IDEA." *Id.* at 599. However, in a later unpublished opinion Judge Smalkin analyzed the legislative history of the fee shifting provision and held that Congress intended for recovery of expert witness fees. *See Dibuo v. Bd. Of Educ. of Worcester County*, Civ. No. S01–1311 (D.Md. Jan. 23, 2002). This Court notes that the House of Representatives Conference Report on the IDEA states:

> The conferees intend that the term "attorneys fees as part of the costs" includes reasonable expenses and fees of expert witnesses and the reasonable costs of any test or evaluation which is found to be necessary for the preparation of the parent or guardian's case in the action or proceeding, as well as traditional costs incurred in the course of litigating a case.

H.R. Conf. Rep. No. 99–687, at 5 (1986), U.S.Code Cong. & Admin.News 1986, 1807, 1808. Accordingly, this Court concurs with Judge Smalkin's analysis and finds that the legislative history of the fee shifting provision of the IDEA supports the conclusion that Congress intended for expert witness fees to be covered by the term "costs" under IDEA § 1415(i)(3)(B).[4]

In this case, Dr. Van Ost was not an expert witness, as she did not testify at the due process hearing, and only acted in a consulting capacity. However, the House Conference Report notes that the term "costs" should also include "the reasonable costs of any test or evaluation which is found to be necessary for the preparation of the parent or guardian's case." H.R. Conf. Rep. No. 99–687, at 5 (1986), U.S.Code Cong. & Admin.News 1986, 1807, 1808. Therefore, the $2,100.00 in fees paid to Dr. Van Ost for expert consulting services is recoverable in this case where Dr. Van Ost's evaluation and report indicated that I.S. was not making meaningful progress at her current public school placement. The Summers are entitled to recover the $9,967.30 of fees directly paid to their two experts. In addition, the Summers are entitled to recover the $4,006.85 of expert fees paid by Beveridge & Diamond.

D. *Final Calculations*

| Name | Court's Rate Determination | Hours Requested | Specific Hours Reduced by Court | Hours Awarded by Court | Fee Amount |
|------|---------------------------|-----------------|--------------------------------|------------------------|------------|
| Anna Jenefsky | 200 | 284.4 | 10% fee reduction for partial success of the 161.8 hours expended on the due process hearing (hours from 6/20/02 to 10/31/02) | due process stage: 161.8 × 200 = $32,360 10% reduction = $3,236 due process hours total = $29,124 remainder: 122.6 × 200 = $24,520 | $53,644 |

4. District courts, outside of this district, have also held that expert witness fees are recoverable under the IDEA. *See Gross v. Perrysburg Exempted Village School Dist.*, 306 F.Supp.2d 726, 739 (N.D.Ohio 2004) ("An award of expert witness fees as part of attorney fees and costs under IDEA conforms with the unique nature of IDEA proceedings."); *R.E. v. New York City Bd. of Educ.*, 2003 WL 42017, *3 (S.D.N.Y. Jan.6, 2003); *Pazik v. Gateway Regional School Dist.*, 130 F.Supp.2d 217, 220–22 (D.Mass.2001); *P.G. v. Brick Tp. Bd. of Educ.*, 124 F.Supp.2d 251, 267 (D.N.J.2000). *But see Neosho R–V School Dist. v. Clark*, 315 F.3d 1022, 1031–33 (8th Cir.2003) (upholding district court decision refusing to grant expert witness fees under the IDEA).

| | | | | | |
|---|---|---|---|---|---|
| Harold Segall | 275 | 67 | 2.5 | 64.5 | $17,737.50 |
| Daniel Krainen | 190 | 29.5 | N/A | 29.5 | $ 5,605 |
| Scott Damelin | 190 | 114.25 | 3.25 | 111 | $21,090 |
| Thomas Blaser | 190 | 512.25 | 22.5 | 489.75 | $93,052.50 |
| Elizabeth Richardson | 170 | 33.5 | N/A | 33.5 | $ 5,695 |
| Brett Cohen | 170 | 18.25 | N/A | 18.25 | $ 3,102.50 |
| S. Dalai | 90 | 26 | N/A | 26 | $ 2,340 |
| D. Rosen | 90 | 17.75 | N/A | 17.75 | $ 1,597.50 |

The total Beveridge & Diamond fee from the chart above is $150,220, which will be reduced by 5% ($7,511), as explained above. Therefore, the total fee award for the time expended by attorneys and paralegals at Beveridge & Diamond is $142,709. The total fee award for the time expended by Ms. Jenefsky is $53,644. The total attorneys' fees award is $196,353.

The total costs award is $20,842.12, which includes amounts expended for expert witness fees.

The total amount awarded for attorneys' fees and costs is $217,195.12.

### CONCLUSION

For the reasons stated above, the Summers' Motion for Attorneys' Fees is GRANTED, to the extent of $196,353 in attorneys' fees and $20,842.12 in costs, and FCPS's Motion to Strike is MOOT. A separate Order consistent with this Memorandum Opinion will follow.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, IT IS HEREBY ORDERED this 14th day of January 2005 that the Motion to Strike of Plaintiff Board of Education of Frederick County Public Schools (Paper No. 72) is MOOT and the Motion for Attorneys' Fees of I.S., a minor, and her parents, Steven and Kelli Summers (the "Summers") (Paper No. 55) is GRANTED, as follows:

1. That the Summers incurred reasonable attorneys' fees in the amount of $196,353;

2. That the Summers are entitled to reasonable costs in the amount of $20,842.12;

3. That the total amount of attorneys' fees and costs awarded to the Summers, which are to be paid by Plaintiff Board of Education of Frederick County Public Schools, is **$217,-195.12**; and

4. That the Clerk of the Court transmit copies of this Order and accompanying Memorandum Opinion to counsel for both parties.