[No. B190959. Second Dist., Div. Seven. Oct. 3, 2007.]

ABEL CRUZ et al., Plaintiffs and Respondents, v.
SHAWN AYROMLOO, Defendant and Appellant.

## COUNSEL

Law Offices of Pollie Okoronkwo, Pollie Okoronkwo; Law Offices of Wayne M. Abb and Wayne M. Abb for Defendant and Appellant.

O'Melveny & Myers, Paul B. Salvaty, Catalina J. Vergara, Shannon Keast; Legal Aid Foundation of Los Angeles and T. E. Glenn for Plaintiffs and Respondents.

## OPINION

**JOHNSON, J.**—A landlord appeals to challenge an award of $123,992.80 in attorney fees to four of his former tenants who sued and prevailed against the landlord on multiple causes of action. The four tenants sought $413,306 in attorney fees under a contractual attorney fee provision in their respective leases. The landlord claims the trial court erred by awarding attorney fees related to matters beyond the contract cause of action for return of the tenants' security deposits. The landlord also claims the amount awarded so far exceeded the fees suggested for contested contract cases in the Superior Court of Los Angeles, Local Rules, rule 3.2 (Los Angeles Superior Court rule 3.2), it amounted to an abuse of discretion requiring reversal. The landlord further challenges the fee award as including attorney fees incurred on behalf of tenants who did not have a contractual right to attorney fees, even though the fees sought were for legal work performed on legal issues common to all tenants. We find no abuse of discretion. Accordingly, we affirm.

### FACTS AND PROCEEDINGS BELOW

Thirty-two tenants sued their former landlord, appellant Shawn Ayromloo. The tenants prevailed on multiple causes of action stemming from appellant's wrongful refusal to allow the tenants to return to their apartments after the City of Los Angeles evacuated them because the building was unsafe. All of

the tenants prevailed on their claims for forcible detainer, wrongful eviction, and negligent infliction of emotional distress. The court found appellant had not legally evicted the tenants. The court further found, because other low-income tenants had in the meantime moved into the building, the tenants could no longer move back into the units. For this reason, the court concluded monetary damages constituted the tenants' only remedy. The court calculated appellant's additional profit due to rerenting the units at higher rates to the new tenants at $240,000. Based on appellant's additional profits because of the wrongful evictions, the court awarded damages in the amount of $29,819 per unit. The court also awarded individual damages, as applicable to each tenant, for lost security deposits, emotional distress, and loss of personal property.

Four of the 32 tenants who prevailed against appellant on their breach of contract and other claims had written leases and are the respondents in this case.[1] These written leases included a contractual provision which allowed for the recovery of attorney fees to the prevailing party in any civil action "in connection with" the lease. Respondents made a motion for attorney fees pursuant to their leases with appellant.[2] The amount of fees sought was $413,306. Respondents had already excluded attorney fees for all work which applied exclusively to other families or units. For example, respondents excluded time spent on interrogatory responses for other families and time spent preparing for trial and for trial time regarding these other families' issues.

Appellant conceded respondents were entitled to attorney fees under Civil Code section 1717 but only for fees incurred litigating the contract causes of action. Appellant challenged the reasonableness of the requested fees, noting the amount sought was 131 times the superior court's guidelines for fee awards in contract cases. Moreover, appellant argued respondents could not recover fees counsel incurred in representing the other tenants, who did not have written leases containing the attorney fee clause.

The trial court awarded $123,992.80 in attorney fees to respondents. In evaluating the reasonableness of the fees, the trial court reduced the requested fees to half because the trial court thought "counsel knew this was a mildly pro bono type of work" and because of the relatively small amount at stake. The court noted the legal work had been performed by the law firm of

---

[1] The four plaintiffs and respondents in this case are Alvaro Nava, Alejandra Sanchez, Harris Douglas, and Daisy Murillo Douglas. Nava and Sanchez had resided in unit 4 of appellant's building, and the Douglases had resided in unit 9.

[2] Respondents' leases provided, "If civil action is instituted *in connection with* this Agreement, the prevailing party shall be entitled to recover court costs and any reasonable attorney's fees." (Italics added.)

O'Melveny & Myers in conjunction with the Legal Aid Foundation of Los Angeles. The court then reduced this amount by another 25 percent to account for noncontract issues, which resulted in a figure of $154,991 in fees. The court further reduced this figure by another 20 percent to account for legal fees incurred for work done specifically for the other tenants, netting an award of $123,992.80.[3] On the other hand, the court noted "issues relating to the Rent Stabilization Act and the general issues were the same as to all building tenants."

Appellant appeals to challenge the trial court's award of $123,992.80 in attorney fees to respondents.

## DISCUSSION

### I. *STANDARD OF REVIEW OF AN AWARD OF ATTORNEY FEES.*

A trial court order awarding attorney fees is "reviewed using the abuse of discretion standard. [Citation.]"[4] "In reviewing an award of attorney fees, the amount awarded by the trial court will not be set aside absent an affirmative showing of abuse of discretion in that the award is 'manifestly excessive in the circumstances.' "[5] An "order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. [Citations.]"[6]

We review the attorney fee award at issue in this case with these standards in mind.

---

[3] However, respondents claimed they had already excluded fees solely related to the other tenants' issues.

[4] *Castro v. Superior Court* (2004) 116 Cal.App.4th 1010, 1017 [10 Cal.Rptr.3d 865].

[5] *Horning v. Shilberg* (2005) 130 Cal.App.4th 197, 210 [29 Cal.Rptr.3d 717], quoting *Children's Hospital & Medical Center v. Bonta′* (2002) 97 Cal.App.4th 740, 782 [118 Cal.Rptr.2d 629].

[6] *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227].

This court affirmed the underlying judgment on which the attorney fee award is based on April 23, 2007, in *Cruz v. Ayromloo* (Apr. 23, 2007, B187621) [nonpub. opn.]. Therefore, appellant's initial argument the attorney fee award must be reversed if the underlying judgment is reversed is moot.

## II. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN THE AMOUNT OF ATTORNEY FEES IT AWARDED.

### A. The Trial Court Did Not Err in Granting Fees Which Were Several Times Higher Than the Schedule of Suggested Fees for Contested Contract Cases in Superior Court Rule 3.2 and Higher Than the Total Damages Awarded to Respondents.

Appellant relies on Los Angeles Superior Court rule 3.2 in challenging the reasonableness of the awarded fees, noting the amount awarded was 39 times the superior court's guidelines for fee awards in contract cases.

Los Angeles Superior Court rule 3.2 provides its fee guidelines apply when a contract provides for reasonable attorney fees "unless otherwise determined by the court."[7] "[J]udges are free to depart from its provisions whenever the interests of justice require . . . . [Citations.]"[8] Moreover, "[t]o the extent a local rule conflicts with a state statute, the rule is invalid. [Citations.]"[9] " '[T]he determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court . . . .' "[10] " 'The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.' "[11]

The trial court did not abuse its discretion in awarding higher fees than allowed for in the·guidelines for contested contract cases in Los Angeles

---

[7] Los Angeles Superior Court rule 3.2(a). (See also Los Angeles Superior Court rule 3.2(d) ["Any application for a fee in addition to a foregoing schedule because of extraordinary services shall be accompanied by an itemized statement of the services rendered or to be rendered."].)

[8] *Ansco Const. Co. v. Ocean View Estates* (1959) 169 Cal.App.2d 235, 241 [337 P.2d 146] (interpreting a prior version of Los Angeles Superior Court rule 3.2).

[9] *Contractors Labor Pool, Inc. v. Westway Contractors, Inc.* (1997) 53 Cal.App.4th 152, 169 [61 Cal.Rptr.2d 715].

[10] *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1096 [95 Cal.Rptr.2d 198, 997 P.2d 511], quoting *Melnyk v. Robledo* (1976) 64 Cal.App.3d 618, 623 [134 Cal.Rptr. 602]; see also *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 154 [50 Cal.Rptr.3d 273] ("The determination of what constitutes a reasonable fee generally 'begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate.' (*PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at p. 1095.)").

[11] *PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th 1084, 1096, quoting *Melnyk v. Robledo, supra*, 64 Cal.App.3d 618, 623–624.

Superior Court rule 3.2. As noted, the rule allows the trial court to exercise its discretion to depart from the rule to award a higher fee award. The "unless otherwise determined by the court" clause gives the trial court leeway to depart from the guidelines and to award a "reasonable" fee award when warranted in a particular case.

 Here, the trial court permissibly departed from the guidelines and based its fee award on the "lodestar" method of calculating attorney fees.[12] Civil Code section 1717 authorizes the trial court to award reasonable attorney fees "[i]n any action on a contract, where the contract specifically provides" for attorney fees, "which are incurred to enforce that contract."[13] Also, Civil Code section 1717 mandates reasonable attorney fees to be "fixed by the court."[14] Here, the trial court awarded fees consistent with Civil Code section 1717. Civil Code section 1717 permitted the trial court to award "reasonable" attorney fees incurred "in connection with" the lease at issue in this case.

Moreover, appellant's contention the trial court abused its discretion because the fee award was higher than the overall damages awarded to respondents is without merit. It is not uncommon to award attorney fees in an amount higher than the total damages awarded to a plaintiff or plaintiffs in a particular case. Appellant cites no authority for the proposition an award of attorney fees must always be less than the award of damages in a given case, and we are aware of none.

> B. *The Trial Court Did Not Err in Basing Its Attorney Fee Award on More Than Solely the Breach of Contract Claims.*

 Appellant contends respondents are only entitled to attorney fees incurred in litigating the contract cause of action for return of their security deposits.

"The attorney's fees clause in a contract may be broad enough to cover tort as well as contract causes of action. [Citations.]"[15] " 'If a contractual attorney fee provision is phrased broadly enough, . . . it may support an award of

---

[12] Respondents submitted an itemized statement of the services rendered and the corresponding hourly rates of the attorneys of record.

[13] Civil Code section 1717, subdivision (a).

[14] Civil Code section 1717, subdivision (a).

[15] *Hasler v. Howard* (2005) 130 Cal.App.4th 1168, 1171 [30 Cal.Rptr.3d 714].

attorney fees to the prevailing party in an action alleging both contract and tort claims . . . .' (*Santisas* [*v. Goodin* (1998)] 17 Cal.4th [599,] 608 [71 Cal.Rptr.2d 830, 951 P.2d 399].)"[16]

Here, the broad language of the attorney fee clause in the lease agreement covered all fee in any civil action stemming from the lease. The attorney fees clause in the lease provided, "If civil action is instituted *in connection with* this Agreement, the prevailing party shall be entitled to recover court costs and any reasonable attorney's fees."[17] The underlying civil action encompassed both breach of contract and tort causes of action arising from the tenants' leases with appellant. Therefore, the trial court did not have to base its award solely on breach of contract damages because the lease contemplated recovery of attorney fees for all claims in any civil action *in connection with* the lease. Apportionment of fees for the breach of contract and tort causes of action was thus unnecessary because the broad language of the attorney fee clause in the contract permitted recovery of attorney fees for breach of contract or any other claim asserted *in connection with* the lease.

C. *The Trial Court Did Not Err in Not Apportioning the Fee Award Because Respondents Sought Fees for Legal Work Performed on Their Behalf, Even Though the Other Tenants Were Incidental Beneficiaries.*

Appellant contends respondents could not recover fees counsel incurred in representing the other tenants who did not have written leases containing the attorney fee clause.

■ Allocation of fees incurred in representing multiple parties is not required when the liability of the parties is "so factually interrelated that it would have been impossible to separate the activities . . . into compensable and noncompensable time units. . . . [Citation.]"[18] In the present case, the trial court reasonably found the tenants' various claims were " ' "inextricably intertwined" ' [citation], making it 'impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units' [citation]."[19]

In any event, respondents sought fees for legal work performed solely on their behalf and the fees were awarded only to them and not to the other tenants. Respondents and the other tenants all lived in the same building,

---

[16] *Wakefield v. Bohlin* (2006) 145 Cal.App.4th 963, 973 [52 Cal.Rptr.3d 400].

[17] Italics added.

[18] *Liton Gen. Engineering Contractor, Inc. v. United Pacific Insurance* (1993) 16 Cal.App.4th 577, 588 [20 Cal.Rptr.2d 200].

[19] *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111 [51 Cal.Rptr.2d 286].

were evacuated from the building, and were not allowed to return to the building by appellant. All tenants asserted the same causes of action. The attorneys conducted legal research pertaining to the overarching legal issues common to all tenants, including the Rent Stabilization Ordinance of the City of Los Angeles[20] and the claims for forcible detainer, wrongful eviction, and negligent infliction of emotional distress. The attorneys had to do the same legal research and analysis in preparing their case on behalf of respondents, irrespective of the number of potential tenants benefiting from the legal work performed. Respondents claimed they took careful measure not to seek attorney fees for any legal work done for the exclusive benefit of the tenants who did not have a right to recover attorney fees. Nevertheless, the court still reduced the fees sought to account for legal fees incurred for work done specifically for the tenants who did not have a contractual right to attorney fees.

The other 28 tenants without contracts containing the attorney fee clause may have been third party beneficiaries of the legal services rendered to respondents who had attorney fees provisions in their respective leases. However, the fact other tenants incidentally benefited from the legal work performed on behalf of respondents does not diminish respondents' contractual right to recover attorney fees litigating issues common to all.

Finally, we find it important to emphasize something we are *not* deciding in this case. Respondents elected not to appeal the trial court's ruling the fee award should be reduced in part because respondents' counsel had agreed to provide representation on a "pro bono" basis. This court's affirmance of the judgment should not be construed as signifying our approval of this particular element of that judgment. We do not find it self-evident a law firm's commendable willingness to provide its services on a pro bono basis to low-income clients should necessarily justify a diminishment in the fee award when that pro bono representation proves successful. Because respondents did not directly challenge the court's decision to reduce the fee award based on the pro bono nature of the litigation, we had no reason to invite the parties to brief the issue. Our research indicates courts reduce a fee award to adjust, for example, for duplicative work, for lack of success on certain issues, or the like.[21] However, our research uncovered no case in which a trial court reduced a fee award simply because of the "pro bono type of work"

---

[20] Los Angeles Municipal Code, section 151.00 et seq.

[21] See, e.g., *Bd. of Educ. of Frederick County v. I.S.* (D.Md. 2005) 358 F.Supp.2d 462, 466, 470 (fee request reduced in part for unsuccessful claim and duplicative work); *Betancourt v. Giuliani* (S.D.N.Y. 2004) 325 F.Supp.2d 330, 333–335 (hourly rate reduced to prevailing rate and award further reduced to reflect limited success); *Alexander S. By and Through Bowers v. Boyd* (D.S.C. 1995) 929 F.Supp. 925, 943 (fee award reduced to account for overlapping and duplicative work).

involved.[22] Moreover, in the analogous situation of contingent fee and legal aid lawyers—where again the clients are not responsible for paying legal fees out of their own pockets—the majority of courts have approved awards at a full level of "reasonable" fees.[23]

[22] See, e.g., *Lolley v. Campbell* (2002) 28 Cal.4th 367, 374–375 [121 Cal.Rptr.2d 571, 48 P.3d 1128] (under various fee-shifting statutes publicly as well as privately funded legal services providers are entitled to awards of reasonable attorney fees); *Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 283 [105 Cal.Rptr.2d 674] (rejecting argument successful defendants in anti-SLAPP (strategic lawsuit against public participation) motion were not entitled to an award of attorney fees because counsel represented them on a partial pro bono basis); *Council House, Inc. v. Hawk* (2006) 136 Wn.App. 153, 160 [147 P.3d 1305] ("unless a statute expressly prohibits fee awards to pro bono attorneys, the fact that representation is pro bono is never justification for denial of fees."); *Barker v. Utah Public Service Com'n* (Utah 1998) 970 P.2d 702, 711 ("Whether the attorneys provided their services pro bono, at a discount, or at full market rate does not effect a determination of reasonable attorney fees."); *Arbor Hill Concerned Citizens Neighborhood Assn. v. County of Albany* (2d Cir. 2007) 493 F.3d 110, 112, footnote 2 ("Our decision today in no way suggests that attorneys from non-profit organizations or attorneys from private law firms engaged in *pro bono* work are excluded from the usual approach to determining attorney fees. We hold only that in calculating the reasonable hourly rate for particular legal services, a district court should consider what a reasonable, paying client would expect to pay."); *United Companies Lending Corp. v. Sargeant* (D.Mass. 1999) 32 F.Supp.2d 21, 25 ("While the possibility of attorney fees may not have factored heavily into the decision to represent Sargeant [(pro bono)], it would be strange indeed to penalize attorneys who are willing to sacrifice profits to represent the less fortunate."); *Lilly v. County of Orange* (S.D.N.Y. 1996) 910 F.Supp. 945, 955 (refusing to impose a 5 percent "pro bono reduction"); *Witherspoon v. Sielaff* (N.D.Ill. 1981) 507 F.Supp. 667, 669, 670 (rejecting argument pro bono counsel should not be entitled to a fee award: "Pro bono services by members of the Bar provide an invaluable service to the less fortunate in our society and, thereby, to society as a whole. Congress clearly intended to encourage this tradition of service in the field of civil rights enforcement. Thus, even though individual attorneys or law firms may have the financial resources to absorb the costs of pro bono services, they are entitled to a fee award to encourage future service by them and promote greater respect for our civil rights by all.").

[23] See, e.g., *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1136 [104 Cal.Rptr.2d 377, 17 P.3d 735] (defendant who brings successful anti-SLAPP motion is entitled to mandatory fees, including a fee enhancement for the contingent risk of the representation); *Thibodeaux v. Stonebridge, L.L.C.* (La.Ct.App. 2004) 873 So.2d 755, 768 (in nursing home abuse case the trial court abused its discretion in reducing the attorney fee award drastically from the percentage stated in the contingency fee contract); *Van Gerwen v. Guarantee Mut. Life Co.* (9th Cir. 2000) 214 F.3d 1041, 1048 ("A district court may not rely on a contingency agreement to increase or decrease what it determines to be a reasonable attorney's fee."); *Quesada v. Thomason* (9th Cir. 1988) 850 F.2d 537, 543 ("We conclude that permitting district courts to lower otherwise reasonable statutory fees because the attorney agreed to represent the plaintiff for a percentage of damages that turns out to be less than a reasonable hourly rate would deter vigorous pursuit of civil-rights claims, [and] would deprive civil rights attorneys of a reasonable compensation as defined by the Supreme Court. [¶] A contrary rule would offer an unjustified windfall to defendants."); see also *Cruz v. Superior Court* (2004) 120 Cal.App.4th 175, 191 [14 Cal.Rptr.3d 917] (petitioners, represented by the Legal Aid Foundation and the Western Center on Law & Poverty, "are entitled to recover their costs in this writ proceeding, which may include reasonable attorney fees pursuant to Code of Civil Procedure section 1021.5.").

## DISPOSITION

The order awarding attorney fees is affirmed. Respondents to recover their costs on appeal.

Perluss, P. J., and Zelon, J., concurred.