Filed 8/10/15  Madrid v. CitiMortgage CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ARNOLD L. MADRID et al., | B248714 c/w B250954 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC489272) |
| v. | |
| CITIMORTGAGE, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Law Offices of Bruce J. Guttman, Bruce J. Guttman; Brent Law Offices and Karen K. Brent for Plaintiffs and Appellants.

Locke Lord, Conrad V. Sison and Christopher Lee for Defendant and Respondent CitiMortgage, Inc.

Wright Finlay & Zak, Jonathan D. Fink and Yelena Cayton for Defendants and Respondents Saxon Mortgage Servicing, Inc., FV-1, Inc., and FV-1, Inc., in trust for Morgan Stanley Mortgage Capital Holdings, LLC.

McGarrigle Kenney & Zampiello, Patrick C. McGarrigle and Philip A. Zampiello for Defendants and Respondents CEREF REO II, LLC, CEREF Partners I, LP, Ron McMahan, and Ron Brandenburg.

————————

## INTRODUCTION

After plaintiffs and appellants Kimberly and Arnold Madrid defaulted on their home loan, they entered into an Affordable Modification Trial Period Plan (TPP) with their lender, defendant and appellant CitiMortgage, Inc. Believing that CitiMortgage thereafter entered into a permanent loan modification agreement with them, the Madrids continued to send reduced payments to the loan's servicer, defendant and appellant Saxon Mortgage Servicing, Inc.[1] Saxon, however, rejected the Madrids' payment and, after a notice of default was recorded, defendants and appellants CEREF REO II, LLC; CEREF Partners I, LP; Ron McMahan; and Ron Brandenburg foreclosed on the Madrids' property.[2]

The Madrids filed this action for, among other things, wrongful foreclosure. During the pendency of the action, the Madrids abandoned any claim that they entered into a permanent modification agreement and asserted other theories of liability. Judgment, however, was entered on the pleadings in the defendants' favor. The Madrids appeal, asserting, among other things, that they can amend their complaint. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Factual background.

In March 2008, the Madrids obtained from CitiMortgage an $832,000 loan, secured by a deed of trust on the Madrids' home in Rancho Palos Verdes. In "early 2010," the Madrids defaulted on their loan. In an effort to meet their obligations, the Madrids, in February 2010, entered into the TPP with CitiMortgage. The TPP

---

[1]    The Madrids also sued FV-1, Inc., and FV-1, Inc., in trust for Morgan Stanley Mortgage Capital Holdings, LLC. FV-1 was CitiMortgage's successor in interest. We refer to FV-1 and Saxon collectively as the Saxon defendants.

[2]    CEREF II was the foreclosing entity. For ease, we refer to CEREF II and its related entities and officers as CEREF or the CEREF defendants.

reduced their monthly payments from $3,726.67 to $3,476.96.[3] The Madrids duly made the three trial payments in February, March, and April 2010, and they continued to tender reduced payments thereafter.

Then, in August 2010, the Madrids entered into what they believed was a permanent loan modification agreement with CitiMortgage. The Madrids continued to make the reduced payments, but CitiMortgage's loan servicer, Saxon,[4] rejected the Madrids' November 2010 payment. In April 2011, a notice of default was recorded.

The following relevant events thereafter occurred in connection with the note and deed of trust:

- *September 13, 2011*: CitiMortgage assigned the deed of trust to FV-1 in trust for Morgan Stanley Mortgage Capital Holdings.

- *October 12, 2011*: FV-1 assigned the deed of trust and note to CEREF I.

- *October 12, 2011*: CEREF I assigned the deed of trust and note to CEREF II.

- *February 2012*: CEREF II bought the property at a trustee's sale.

## II. Procedural background.

### A. *The first amended complaint.*

On August 6, 2012, the Madrids filed their first amended verified complaint (FAC).[5] Based primarily on allegations they entered into a permanent loan modification agreement, the FAC stated causes of action for: (1) quiet title (CEREF II, Brandenburg,

---

[3] The TPP was apparently offered under the federal Home Affordable Mortgage Program (HAMP). (See generally *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012) 673 F.3d 547, 554, 556-557.) " 'The goal of HAMP is to provide relief to borrowers who have defaulted on their mortgage payments or who are likely to default by reducing mortgage payments to sustainable levels, without discharging any of the underlying debt.' " (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 785.) Under HAMP, if a defaulting borrower qualifies, the loan servicer implements a trial period plan under which the borrower makes payments under new terms for a trial period of three or more months. (*Wigod,* at p. 556.)

[4] Saxon began servicing the loan in October 2010.

[5] The original complaint, filed July 31, 2012, is not in the Appellants' Appendix.

3

McMahon); (2) slander of title (CEREF I & II and Regional Service Corp.); (3) negligence (all defendants); (4) cancellation of instruments (all defendants); (5) intentional infliction of emotional distress (Saxon defendants and CEREF); (6) unfair business practices (all defendants); and (7) Rosenthal Fair Debt Collection Practices Act (all defendants).[6]

B.     *CitiMortgage demurs to the FAC.*

CitiMortgage demurred to the FAC on the ground, among others, it never entered into a permanent loan modification agreement with the Madrids. CitiMortgage also argued that the quiet title and cancellation of instruments claims failed because the Madrids did not allege tender of the loan balance. The Madrids, however, maintained that the permanent loan modification agreement was valid.

On November 2, 2012, at an unreported hearing, the trial court sustained CitiMortgage's demurrer "without leave to amend and without prejudice." The November 5, 2012 judgment of dismissal, however, stated: "On November 2, 2012, this Court sustained [CitiMortgage's] Demurrer to the [FAC] without leave to amend on the ground that Plaintiffs failed to state sufficient facts to constitute any cause of action against Citi. The Court dismissed the case as to Citi with prejudice pursuant to California Civil Procedure Section 581(f)."

The Madrids do not appeal that judgment.

C.     *The Madrids withdraw claims based on the permanent loan modification agreement.*

After CitiMortgage was dismissed from the action, the remaining parties, CEREF and the Saxon defendants, engaged in discovery. During the January 8, 2013 deposition of Kimberly Madrid's cousin, the Madrids discovered that, as CitiMortgage had asserted, the permanent loan modification agreement was indeed a fraud, apparently perpetrated by the cousin. The Madrids therefore withdrew claims based on the agreement.

---

[6]     On August 9, 2012, the Madrids recorded a lis pendens.

4

D.    *CEREF moves for judgment on the pleadings and for attorney fees.*

After the Madrids' concession, CEREF moved for judgment on the pleadings or, alternatively, for "renewal of demurrers to remaining claims" in the FAC.[7]  CEREF argued that because the Madrids had withdrawn any claim based on having a permanent loan modification agreement and had admitted they did not tender the loan balance, no cause of action was stated.  The Madrids responded that their causes of action remained viable because CitiMortgage's September 13, 2011 assignment assigned only the deed of trust, and not the note, to FV-1, rendering the chain of title defective.  The Madrids also argued it was inequitable to require tender.

The trial court granted CEREF's motion without leave to amend and entered judgment on March 4, 2013.[8]  As the prevailing party on an action on a contract (i.e., the note and deed of trust) containing an attorney fees provision (Civ. Code, § 1717), CEREF was granted attorney fees in the amount of $150,000.

E.    *The Madrids move for leave to file a second amended complaint (SAC).*

The Madrids filed two motions for leave to file a SAC.  The first motion, which was heard in April 2013, asked the court to set aside CEREF's judgment and for leave to file a SAC to "plead certain supporting factual allegations missing from the FAC pertaining to the lack of an endorsement of the Note relating to the recent production of the alleged Allonge by the CEREF defendants."  A proposed SAC was not submitted with the motion, and the trial court denied it, noting plaintiffs' complete failure to comply with California Rules of Court, rule 3.1324.

The second motion for leave to file a SAC was filed on July 1, 2013—after CEREF and CitiMortgage had been dismissed from the case and one month before trial was scheduled to begin.  The proposed pleading sought to bring CitiMortgage back into

---

[7]    Based on a prior demurrer, only the quiet title, slander of title, and cancellation of instrument causes of action remained extant as to CEREF.  The trial court had also granted a motion to strike filed by CEREF, but the motion is not in the record.

[8]    That same day, the court granted CEREF's motion to expunge the Madrids' lis pendens.

5

the action.  Noting that the "scope of this action has [been] narrowed significantly," the Madrids proposed (1) withdrawing the causes of action for quiet title, slander of title, cancellation of instruments, intentional infliction of emotional distress, and violation of the Rosenthal Fair Debt Collection Act, and (2) stating new causes of action for breach of contract, negligence, fraud, and unfair business practices.  This latest iteration of the complaint was based on CitiMortgage's alleged failure to credit payments the Madrids made under the TPP, which "caused Saxon to refuse to accept payments tendered by the Madrids which, in turn, precipitated a foreclosure."

CitiMortgage and the Saxon defendants separately opposed the motion. CitiMortgage argued that the motion was untimely and the proposed causes of action were barred by res judicata.  The Saxon defendants opposed the motion on the grounds it improperly sought reconsideration of the trial court's prior order denying plaintiffs leave to file a SAC.  On July 25, 2013, the trial court denied leave to file the proposed SAC.[9]

F.     *The Saxon defendants move for judgment on the pleadings.*

The same day the trial court denied the Madrids leave to file the SAC, the court granted Saxon's motion for judgment on the pleadings.  As did CEREF, Saxon argued that the Madrids' claims failed because they did not tender the loan balance and because the propriety of the September 13, 2011 assignment was irrelevant to any right to foreclose.  The Madrids responded that, to the extent there was a tender requirement, they satisfied it by trying to make monthly payments.  In any event, the trustee's deed was void on its face because of fraud in the chain of title.

On July 25, 2013, the trial court granted the Saxon defendants' motion.  Judgment was entered in their favor on September 3, 2013.

---

[9]     The court denied the motion "for the reasons stated on the record."  The reporter's transcript from the July 25, 2013 hearing is not in the record on appeal.

6

## DISCUSSION

The three groups of defendants—CEREF, CitiMortgage, and Saxon—obtained dismissals from the action in three different ways. CEREF's motion for judgment on the FAC was granted. CitiMortgage's demurrer to the FAC was sustained without leave to amend. And the Saxon defendants' motion for judgment on the FAC was granted. On appeal, however, the Madrids challenge: **I.** the order granting CEREF's motion for judgment on the pleadings and order granting CEREF attorney fees; **II.** the denial of leave to file the SAC; and **III.** the order granting the Saxon defendants' motion for judgment on the pleadings.

### I.     The judgment in CEREF's favor and attorney fees.

A.     *The trial court properly granted CEREF's motion for judgment on the pleadings.*[10]

By the time CEREF moved for judgment on the FAC, the Madrids had abandoned any claim they entered into a permanent loan modification agreement. The Madrids' theory of the case now centered on CitiMortgage's September 13, 2011 assignment of the deed of trust to FV-1. The FAC alleged: "On September 13, 2011, CitiMortgage recorded an Assignment of the Deed of Trust <u>without the note</u> . . . to defendant FV-1 . . . ." Because the assignment did not reference the promissory note, the Madrids contended that the assignment and all subsequent assignments were invalid, and therefore there was a defect in the chain of title that rendered the foreclosure sale void.

There is some support for the notion that a note and deed of trust may not be transferred separately. (See generally *Carpenter v. Longan* (1872) 83 U.S. 271, 274 [a "note and mortgage are inseparable; the former as essential, the latter as an incident.

---

[10]     The standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer. (*Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281, 1298; see also Code Civ. Proc., § 438.) "We treat the pleadings as admitting all of the material facts properly pleaded, but not any contentions, deductions or conclusions of fact or law contained therein. We may also consider matters subject to judicial notice. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any theory." (*Dunn,* at p. 1298.)

7

An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity"]; *Domarad v. Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, 553-554 ["a deed of trust is a mere incident of the debt it secures and that an assignment of the debt 'carries with it the security.' [Citations]; [ ] a deed of trust is inseparable from the debt and always abides with the debt, and it has no market or ascertainable value, apart from the obligation it secures [citations]; and [ ] a deed of trust has no assignable quality independent of the debt, it may not be assigned or transferred apart from the debt, and an attempt to assign the deed of trust without a transfer of the debt is without effect"].)

*Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433 (*Debrunner*), and more recent authority, however, have rejected the notion that a note and its security are inseparable. The plaintiff in *Debrunner* sued to stop an impending foreclosure, because the foreclosing defendants did not have possession of or ownership rights to the note. (*Id.* at p. 437.) He also argued that there was no "proper 'chain of assignment' " because the deed of trust had been assigned without the note. (*Ibid.*) *Debrunner* found that the foreclosure sale could proceed, because Civil Code sections 2924 through 2924k, which govern nonjudicial foreclosure proceedings, set forth a comprehensive scheme that "do[es] not require that the note be in the possession of the party initiating the foreclosure." (*Debrunner*, at p. 440; accord, *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 513 [foreclosure statutes "do not require that the foreclosing party have an actual beneficial interest in both the promissory note and deed of trust to commence and execute a nonjudicial foreclosure sale"]; *Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 511-512.)

*Debrunner* found misplaced the plaintiff's reliance on Uniform Commercial Code provisions regarding negotiable instruments and on *In re Veal* (Bankr. 9th Cir. 2011) 450 B.R. 897, both of which the Madrids rely on. The Uniform Commercial Code is inapplicable because the statutory framework governing nonjudicial foreclosure sales is exhaustive and contains no requirement requiring a beneficial interest in the note *and* the deed of trust to commence a nonjudicial foreclosure sale. (*Debrunner, supra,*

8

204 Cal.App.4th at pp. 440-441; see *Garfinkle v. Superior Court* (1978) 21 Cal.3d 268, 278 [Civil Code constitutes a comprehensive scheme regulating in detail all aspects of nonjudicial foreclosure process].) Similarly, *Veal* interpreted the Uniform Commercial Code and Illinois law, which are different from California's nonjudicial foreclosure statutes. *Veal* acknowledged that some states, including California, have altered the common law rule that a " 'note and mortgage are inseparable.' " (*Veal*, at pp. 916-917 & fn. 34; see also *Debrunner,* at pp. 441-442 [distinguishing *Veal* on legal and factual grounds].)

We agree with *Debrunner* and similarly conclude that if the September 13, 2011 assignment of the deed of trust from CitiMortgage to FV-1 did not include an assignment of the note, this did not render the foreclosure sale void.[11]

In any event, to the extent a cause of action could be stated based on an irregularity in the September 13, 2011 assignment, the Madrids had no standing to bring it. A promissory note is a negotiable instrument, and therefore a borrower must anticipate that the note can and might be transferred to another creditor.[12] (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1507.) As to a borrower, an assignment merely substitutes one creditor for another, without changing the borrower's obligations under the note. (*Ibid*.) A plaintiff in a wrongful foreclosure action therefore must demonstrate that an " 'alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interest.' " (*Ibid.*; see also *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272; see *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85 [where borrower was in default on note, borrower lacked standing "to complain about any alleged lack of authority or

---

[11]   The parties dispute whether the September 13, 2011 assignment included an assignment of the note. Although resolution of the dispute is unnecessary to the issues on appeal, CEREF produced evidence of an allonge assigning the note to FV-1. Notably, neither CitiMortgage nor the Saxon defendants or any party to any of the assignments have claimed a defect in the chain of title.

[12]   The Madrids' note acknowledges "that Lender may transfer this Note."

9

defective assignment," absent a showing of prejudice]; but see *Glaski v. Bank of America* (2013) 218 Cal.App.4th 1079, 1094-1095 [a borrower has standing to challenge a trust deed assignment if the assignment is void].)[13] Even "if any subsequent transfers of the promissory note were invalid, [plaintiff-borrower] is not the victim of such invalid transfers because her obligations under the note remain unchanged. Instead, the true victim may be an individual or entity that believes it has a present beneficial interest in the promissory note and may suffer the unauthorized loss of its interest in the note." (*Jenkins v. JPMorgan Chase Bank, N.A., supra,* 216 Cal.App.4th at p. 515; accord, *Herrera,* at pp. 1507-1508 [because an assignment of a note and deed of trust merely substitutes one creditor for another, without changing the borrower's obligations, the victim of a void assignment is not the borrower, but the assignor who suffers the unauthorized loss of a promissory note].)

The Madrids' FAC fails to allege facts showing they suffered prejudice as a result of any irregularity in the September 13, 2011 assignment. The Madrids concede they defaulted on the note. An irregularity in the assignment did not prevent the Madrids from making payments on the note. In other words, the Madrids fail to establish prejudice by virtue of the foreclosing entity's identity.[14]

---

[13] The California Supreme Court is reviewing whether, in an action for wrongful foreclosure on a deed of trust securing a home loan, the borrower has standing to challenge an assignment of the note and deed of trust on the basis of defects allegedly rendering the assignment void. (*Yvanova v. New Century Mortgage Corp.* (2014) 226 Cal.App.4th 495, review granted Aug. 27, 2014, S218973.)

[14] We discuss *post* the Madrids' argument they should have been given leave to file a SAC to state causes of action based on CitiMortgage's failure to enter into a permanent loan modification agreement with them. Because the request for leave to amend appears to have been directed only against CitiMortgage and the Saxon defendants, and the Madrids do not argue otherwise on appeal, we do not discuss the impact, if any, of those proposed allegations against CEREF.

10

B.    *Attorney fees.*

The trial court awarded CEREF $150,000 in attorney fees.  The Madrids concede that if judgment was proper, then CEREF was entitled to attorney fees.  They dispute, however, that the amount of fees awarded was reasonable.

Our review of the reasonableness of fees is deferential, and we will not set aside the trial court's order absent an affirmative showing of abuse of discretion.  (*Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270, 1274.)  " '[A]n experienced trial judge is in a much better position than an appellate court to assess the value of the legal services rendered in his or her court, and the amount of a fee awarded by such a judge will therefore not be set aside on appeal absent a showing that it is manifestly excessive in the circumstances.' [Citation.]  'The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination.' " (*Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1509.)  All intendments and presumptions are indulged in favor of the correctness of the trial court's order.  (*Cruz,* at p. 1274.)

In litigating this matter, CEREF filed and responded to multiple motions and engaged in discovery.  Plaintiffs also were a moving target, basing their case initially on having a permanent modification agreement and then changing their theory of the case upon discovery that the agreement was fraudulent.  The trial court was in the best position to determine the reasonableness of counsel's work and whether, as the Madrids' assert, CEREF's counsel "unnecessarily increased the cost of this litigation by an uncooperative spirit of lawyering."  On this record, we discern no abuse of discretion in the amount awarded, which, we note, was approximately $50,000 less than the $197,523.36 CEREF requested.

## II.    The Madrids' motion for leave to file the SAC.

After CEREF and CitiMortgage had been dismissed, the Madrids moved for leave to file a SAC to allege causes of action based on CitiMortgage's failure to credit payments the Madrids made under the TPP.  That motion was directed against

11

CitiMortgage, who had been dismissed, and the Saxon defendants, who had not yet been dismissed but whose motion for judgment on the pleadings was being concurrently heard.

The motion was an improper attempt to resurrect the case against CitiMortgage. CitiMortgage's demurrer had been sustained without leave to amend, and a judgment of dismissal was entered November 5, 2012. The Madrids did not appeal that judgment. That judgment was final. (Cal. Rules of Court, rule 8.104; see *Goddard v. Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47, 52.) Therefore, by the time the Madrids filed their motion for leave to file the SAC on July 1, 2013, the trial court lacked jurisdiction to do anything *but* deny the motion.

We also reject any suggestion, based on what might be nothing more than a typographical error, that the trial court invited the Madrids' motion to amend the complaint. True, the court's November 2, 2012 minute order ambiguously sustained CitiMortgage's demurrer "without leave to amend and without prejudice." But the statement's ambiguity cannot be interpreted as a license to circumvent rules of procedure, especially given that judgment was entered in CitiMortgage's favor *with prejudice.* Furthermore, the Madrids have not provided the reporter's transcript from the hearing on CitiMortgage's demurrer. (Cal. Rules of Court, rule 8.120(b).) The Madrids, as appellants, had a duty to provide an adequate record to demonstrate error. (*Estrada v. Ramirez* (1999) 71 Cal.App.4th 618, 620, fn. 1; *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712, overruled on another ground by *Wilson v. Garcia* (1985) 471 U.S. 261.) Counsel's "recollections" about what the trial court said at the hearing are no substitute for an adequate record.

In any event, the motion for leave to file the SAC was properly denied on its merits. Although leave to amend a pleading should be liberally granted (*Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 487) and we review a trial court's refusal to allow amendment of a pleading for abuse of discretion (*Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242; Code Civ. Proc., § 473), no such abuse will be found if the party seeking to amend was dilatory and the delay prejudiced the opposing party (*M&F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.* (2012)

12

202 Cal.App.4th 1509, 1534; *Magpali*, at p. 486). Although courts allow great liberality in permitting amendments to pleadings at any stage of the proceedings up to and including trial (*Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746), where there is a lack of diligence in pursuing the new claims and the request for leave to amend is made on the eve of trial, courts are more critical of the proposed amendment (*Royal Thrift & Loan Co. v. County Escrow, Inc*. (2004) 123 Cal.App.4th 24, 41-42; *P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345; *Magpali,* at p. 488).

The Madrids filed the complaint in July 2012 and the FAC in August 2012. CitiMortgage obtained judgment on the FAC in November 2012. Then, in January 2013, the Madrids "discovered" facts giving rise to the proposed amendment; namely, CitiMortgage failed to credit payments the Madrids made on the loan. The Madrids, however, did not file their motion to amend the pleadings until July 1, 2013, almost seven months after discovering the "new" facts. By the time the Madrids' motion was heard on July 25, 2013, CitiMortgage had long been dismissed from the case, and trial was scheduled to begin in August 2013 against the remaining Saxon defendants. In CitiMortgage's absence, discovery had been pursued, including depositions at which the Madrids claimed they discovered the facts giving rise to the new claims. CitiMortgage and Saxon were therefore prejudiced by the untimely proposed amendment.

But even if the Madrids were diligent in pursuing their motion, it is unclear what the proposed SAC added to the operative FAC. The proposed SAC's causes of action for breach of contract, negligence, fraud, and unfair business practices were based on CitiMortgage's and Saxon's failure to credit payments the Madrids made under the TPP. The third cause of action for negligence in the operative FAC similarly alleged: defendants "had a duty to exercise reasonable care and skill *to maintain proper and accurate loan records* . . . including, but not limited [to], disclosing to Plaintiffs the status of any foreclosure actions taken by it, disclosing who owned Plaintiffs['] loan to Plaintiffs, acknowledging and honoring the loan modification Agreement, refraining from taking any action against Plaintiffs that they did not have the legal authority to do, and providing all relevant information regarding the loan . . . ." (Italics added.)

13

The FAC therefore *already* alleged that defendants failed to maintain accurate loan records. The proposed SAC, in the Madrids' own words, merely "clarif[ied] the negligence allegations." "Most of these changes are not significantly different from those alleged in the [FAC], and those few changes that are substantive are the direct result of information learned in discovery." Given that the SAC pleaded no new theory, we fail to see how the trial court could have abused its discretion in denying leave to amend.

The Madrids, however, for the first time, on appeal, suggest another reason why the foreclosure was wrongful: CitiMortgage breached the TPP by failing to enter into a permanent modification agreement. This is a valid theory. (*Rufini v. CitiMortgage, Inc.* (2014) 227 Cal.App.4th 299, 305 [listing cases addressing "the obligations of lenders and borrowers who engage in attempts to modify home mortgages under" HAMP]; *West v. JPMorgan Chase Bank, N.A., supra,* 214 Cal.App.4th 780; *Corvello v. Wells Fargo Bank, N.A.* (2013) 728 F.3d 878, 884 [where a borrower alleges compliance with the terms of their TPP and the loan servicer fails to offer a permanent modification, the borrower has a claim for breach of contract]; *Wigod v. Wells Fargo Bank, N.A., supra,* 673 F.3d 547.) It cannot, however, be asserted against CitiMortgage, because, as we have said, CitiMortgage has a final judgment from which no appeal was taken.

As to the Saxon defendants and to the extent the Madrids raise this theory as to them, it does not apply. CitiMortgage, not the Saxon defendants, entered into the TPP with the Madrids. Saxon merely serviced the loan. FV-1 was assigned the beneficial interest under the deed of trust and note. It is therefore unclear how the Saxon defendants owed the Madrids any obligation with respect to a permanent loan modification.

III. **The judgment in favor of the Saxon defendants.**

The Madrids raise two contentions on appeal as to the Saxon defendants (Saxon, the loan servicer, and FV-1, beneficiary of the deed of trust and/or note):[15] first, the trial

---

[15] Plaintiffs raise no arguments specific to FV-1, except to imply their claims against FV-1 are based on its status as CitiMortgage's successor in interest. Our discussion regarding CitiMortgage would therefore apply to FV-1.

14

court erred by granting the Saxon defendants' motion for judgment on the FAC,[16] and, second, the court erred by denying leave to file the SAC, which proposed causes of action for negligence, fraud, and unfair business practices against the Saxon defendants.[17]

As we have said, the allegations against the Saxon defendants in the FAC and in the proposed SAC were basically the same. Specifically, plaintiffs and CitiMortgage entered into the TPP in February 2010. Under the TPP, plaintiffs made reduced payments of $3,476.96 in February, March, and April 2010. Plaintiffs continued to make the reduced payments through October 2010, when Saxon began servicing the loan. Saxon rejected the November 2010 payment. Whereas the FAC alleged that plaintiffs continued to make payments because they thought they had a permanent modification agreement, the SAC alleged that, in June 2010, CitiMortgage decided it would not enter into a permanent modification agreement, but the Madrids continued to make, and CitiMortgage continued to accept, payments. CitiMortgage, however, failed to report the April through October 2010 payments to Saxon, who, in turn, failed to investigate the Madrids' claims they had a loan modification.

Assuming the truth of these allegations, as we must, it is unclear how they state claims for fraud, negligence, and unfair business practices against the Saxon

---

[16] The FAC alleged negligence, cancellation of instruments, intentional infliction of emotional distress (IIED), unfair business practices, and unfair debt collection practices against Saxon. The IIED claim was based on the now discredited permanent loan modification agreement. Because plaintiffs abandoned claims based on that fraudulent agreement, the IIED claim does not appear to be at issue, and plaintiffs do not argue otherwise.

Also, at the time the Saxon defendants' motion for judgment on the pleadings was heard, plaintiffs' theory of the case was the September 13, 2011 assignment was defective. To the extent that theory applied to the Saxon defendants, we rejected it above. (See generally, *Debrunner, supra,* 204 Cal.App.4th 433.)

[17] To clarify, the SAC alleged negligence and fraud against Saxon Mortgage and unfair business practices against Saxon Mortgage and FV-1.

15

defendants.[18] As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money. (*Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1096; see also *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 67 [a "loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money"; and therefore there is no "common law duty to offer or approve a loan modification"]; but see *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872 [in the context of a construction, as opposed to residential, loan, lender had a duty to review loan modification request in good faith].) Notwithstanding the general rule, *Nymark* does not stand for the proposition that a lender or loan servicer *never* owes a duty of care. (*Jolley,* at p. 901.) Some courts have found that a lender owes a borrower a duty of care in negotiating or processing a loan modification agreement. (See, e.g., *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 947-949 (*Alvarez*); *Rowland v. JPMorgan Chase Bank, N.A.* (N.D.Cal., Mar. 12, 2014, No. C 14-00036 LB) 2014 WL 992005; *Harris v. Bank of America Corp.* (C.D.Cal., Mar. 17, 2014, No. 13-CV-0175 DMG OPX) 2014 WL 1116356.) Where plaintiffs "allege that the mishandling of their [loan modification] applications 'caus[ed] them to lose title to their home,' " a negligence cause of action may be stated. (*Alvarez,* at p. 948.)

Although the Madrids rely on the principle articulated in *Alvarez*, it is inapplicable. The Madrids do not allege that Saxon mishandled their loan modification application. Indeed, Saxon had nothing to do with negotiating or processing the TPP and/or a permanent modification agreement. Rather, Saxon's failure was in failing to credit some of the payments the Madrids made under the TPP. The TPP, however, was "not a modification of the Loan Documents," and it was effective for a trial period of three months, which expired in or about May 1, 2010. Although the Madrids continued

---

**18** Plaintiffs focus on the negligence claim and make no specific argument regarding fraud and unfair business practices.

to tender payments under the TPP after April, they were, nonetheless, in default, because they were no longer entitled to make payments in the reduced amount. And, as they now concede, they did not have a permanent modification agreement entitling them to make payments in the reduced amount.

The Madrids' assertions that had Saxon accurately accounted for the April through October 2010 payments they would have been "sufficiently current" and "less than one full month behind in their mortgage payments" are nothing less than concessions they were in default. Had Saxon done what the Madrids claim it should have done—properly accounted for the payments and investigated their claim they had a modification agreement—Saxon would have come to the same conclusion it in fact reached: there was no permanent modification agreement and the Madrids were in default. Even if Saxon did not account for some of the Madrids' loan payments, there is no connection between that failure and the foreclosure.

## DISPOSITION

The judgment is affirmed. Defendants and respondents are to recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

KITCHING, J.

17