Filed 3/5/24  Yee v. Weinberg CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| GLORIA YEE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> LEE WEINBERG et al., <br><br> Defendants and Respondents. | A163850, A164131, A164691 <br><br> (City and County of San Francisco Super. Ct. No. CGC16555021) |

After a bench trial, plaintiff landlord Gloria Yee prevailed against tenant and defendant restaurant enterprise Fat Noodle 2nd SF, LLC, among others, in her action for (1) breach of contract, (2) breach of express indemnity, and (3) negligence. In this consolidated appeal, we review an August 26, 2021[1] order denying Yee's motion for attorney fees as to United States Liability Insurance Company (USLI), who had intervened in the litigation before withdrawing on the eve of trial. We also review the judgment and a December 21 post-judgment order regarding the remaining litigants' motions for attorney fees. Finding no reversible error in any respect, we affirm the judgment and the challenged attorney fee orders.

---

[1] All subsequent references to dates are to the year 2021, unless otherwise noted.

1

# BACKGROUND

Yee is the trustee of a family trust that owns the Bourdette Building in San Francisco. In 2014, she leased space for a restaurant to Fat Noodle 2nd SF, LLC (Fat Noodle 2), a company later determined to be the alter ego of Fat Noodle, LLC (Fat Noodle 1).[2] Involved in both Fat Noodle companies was a trio of restaurateurs: Lee Weinberg, Adam Fleischman, and Joshua Skenes. Weinberg and Fleischman's involvement was through AdVantage Restaurant Partners, LLC, a company co-managed by Weinberg's Dauntless, LLC, and Fleischman. Skenes was involved in Fat Noodle through his own company, Saison, LLC, of which Fleischman was also a member.

In 2015, an unpermitted demolition took place, but the planned Fat Noodle restaurant failed to materialize, rent payments stopped, and Yee sued Weinberg and Fat Noodle 2 for breach of contract, breach of express indemnity, and negligence.

In time, Yee would amend her complaint to add Fat Noodle 1, Fleischman, Skenes, Saison, AdVantage, and Dauntless as defendants. Dauntless had been suspended some four months before the filing of Yee's complaint, and the other legal entities soon followed suit: before trial began in 2021, the corporate charters of the Fat Noodle defendants, AdVantage, and Saison had all been suspended. The trial court found that the prerequisites to try the claims against the suspended companies in absentia under section 594(a) of the Code of Civil Procedure were satisfied and accordingly proceeded with trial.

---

[2] Fat Noodle 1 and Fat Noodle 2 are sometimes referenced collectively below as the "Fat Noodle defendants."

**USLI Intervenes then Withdraws the Complaint in Intervention**

USLI, which had issued a commercial general liability (CGL) policy to Fat Noodle 2 prior to the filing of Yee's complaint, moved for leave to intervene on behalf of Fat Noodle 2, Fat Noodle 1, AdVantage, Saison, and Dauntless, respectively. On June 21, the trial court granted those motions, except for the pending motion concerning Saison. On the same day, USLI simultaneously withdrew its motion to intervene on behalf of Saison and filed a motion for dismissal of its complaint in intervention on behalf of Fat Noodle 2, Fat Noodle 1, and AdVantage suspended entities. Those requests were granted and a bench trial proceeded against Weinberg, Fleischman, Skenes, and a newly reinstated Dauntless, LLC.

On August 26, in light of the withdrawal of USLI's motion to intervene on behalf of Saison and its requests for dismissal as to the other entity defendants, the trial court found that Yee had "prevailed against USLI and [was] entitled to reasonable costs as provided by statute." In the same order, however, the trial denied Yee's motion for attorney fees against USLI because the lease agreement's attorney fees provision did not apply to USLI. In relevant part, that agreement provides: "In the event of any dispute between Landlord and Tenant in any way related to this Lease, and whether involving contract and/or tort claims, the non-prevailing party shall pay to the prevailing party all reasonable attorneys' fees . . . ." (Italics added.) The trial court reasoned as follows: "While USLI is a party to the case, USLI is not a party to the lease, and there is no authority to order USLI to pay plaintiffs attorneys' fees absent a contract between the parties containing an attorneys' fee provision pursuant to Civil Code section 1717."

## Outcome of the Bench Trial

At the trial's conclusion, judgment was entered for Yee and "against tenant [Fat Noodle 2] and Fat Noodle [1]" for breach of contract and breach of express indemnity "in the amount of $1,435,081." For the same two causes of action, judgment was entered "for Dauntless, Fleischman, Weinberg, and Skenes." Yee "did not prevail against AdVantage and Saison on [those] causes of action, but because they [were] suspended corporations, judgment [would] not enter for AdVantage and Saison . . . ." As to the negligence claim, judgment entered for Yee "and against" Fat Noodle 2, and Fat Noodle 1, AdVantage, and Weinberg, but judgment also entered "for Dauntless, Fleischman and Skenes." Yee "did not prevail against Saison on the third (negligence) cause of action, but because Saison [was] a suspended corporation, judgment [would] not enter for Saison . . . ." For the same cause of action, the trial court awarded Yee damages of $10,160, a figure that included Department of Building Inspection fines, the costs Yee incurred to remove asbestos and debris, and interest.

As explained in the September 3 statement of decision, the judgment rested in part on the trial court's resolution of Yee's claims concerning alter ego liability. In this respect, the trial court determined that Yee had met her burden of showing by preponderance of the evidence that Fat Noodle 1 was an alter ego of Fat Noodle 2. However, the court also concluded that Yee had failed to make the requisite showing of alter ego liability as to AdVantage, Saison, Dauntless, Skenes, Fleischman, and Weinberg.

## Court Decides Post Trial Attorneys' Fees Motions

On December 21, the trial court ruled on the parties' various post-judgment motions for attorney fees, to strike and tax costs, and to offset. The court ordered that Yee "recover attorney[] fees . . . from [Fat Noodle 2] and

Fat Noodle" 1 (but not Weinberg), and that the prevailing defendants—Dauntless, Skenes, Fleischman, and Weinberg—recover attorney fees from Yee. In explaining the latter orders, the trial court rejected Yee's argument that those "defendants should be denied their fees because they were paid by USLI and" such fee awards "would in effect reimburse nonprevailing USLI." On the other hand, in awarding reasonable attorney fees to the prevailing defendants, the trial court based its order on the hourly rate USLI actually paid the various attorneys, not the prevailing rates for lawyers with similar experience and expertise.

Wherever the same firm represented both a prevailing defendant and a suspended corporation via USLI's complaints in intervention, the trial court awarded only those fees that related solely to the defense of the prevailing defendant; when an attorney's efforts would have been undertaken even if the prevailing defendant was not a party, the fees for those efforts were not awarded. As for the motion for attorney fees filed by Fleischman, whose counsel did not represent any suspended corporation, the trial court found that "much of the work billed . . . was not 'reasonably necessary to the conduct of the litigation' "; accordingly, the court reduced the number of billed hours underlying the attorney fees awarded to Fleischman.

## DISCUSSION

### 1. *There Was No Error in the Trial Court's Denial of Yee's Motion for Attorney fees as to USLI*

Yee argues that the trial court erred in denying her motion for attorney fees as to USLI. According to Yee and contrary to the trial court's reasoning, "[w]here an intervening insurer crosses the line from defending solely under its policy to asserting affirmative claims under its insured's contract, the

5

prevailing party should recover attorney fees against the intervening insurer just as it would" have against a contracting party. We are not persuaded.

We review "the legal basis for" an order denying a motion for attorney fees "de novo." (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.) "Except as attorney fees are specifically provided for by statute, the measure and mode of compensation . . . is left to the agreement, express or implied, of the parties." (Code Civ. Proc., § 1021.) No statute specifically provides for Yee to recover attorney fees from USLI,[3] and no agreement for attorney fees exists between Yee and USLI. Thus, the trial court had no power to grant Yee's motion.

As Yee acknowledges, "there may not be a case specifically on point in this context" standing for the proposition she urges us to adopt. But Yee has no authority for her desired extension of existing law, either, and we decline to take the law that further step. In *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, the party ordered to pay attorney fees had agreed to a contractual attorney fee provision; here, USLI made no such agreement. Nor is USLI an intended third-party beneficiary of the lease, as was the nonsignatory party from whom attorney fees could be recovered in *Real*

---

[3] We note that the court's pronouncement of Yee as the prevailing party over USLI notwithstanding, Civil Code section 1717, which authorizes attorney fees to a prevailing party in an action on a contract "whether he or she is the party specified in the contract or not," is unavailing to Yee because subsection (b)(2) of Civil Code section 1717 specifies that in cases where an action on a contract has been "voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section." (Civ. Code, § 1717, subd. (b)(2).) Because USLI's complaints in intervention purported to assume the defense of its clients against the breach of contract and breach of express indemnity claims, its voluntary dismissal of the complaints in intervention shield it from liability for attorney fees under Civil Code section 1717. Civil Code section 1717 provides an alternative justification in support of the trial court's order denying Yee's motion.

6

*Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 379–380. In short, the trial court was correct to conclude that "there is no authority to order USLI to pay" Yee's attorney fees.[4]

### 2. *Yee's Appeal from the Judgment*

In challenging the judgment, Yee argues that the trial court erred in three respects: (1) failing to ascribe alter ego liability to any entity or person other than Fat Noodle 1; (2) failing to consider whether AdVantage, Saison, Dauntless, and the individual defendants could be held liable as agents of the parties against whom judgment was entered; and (3) by declining to assess damages to the leased property in terms of the purported "rent concessions" Yee gave to a subsequent tenant. We reject these contentions.

### A. Substantial Evidence Supports the Trial Court's Determinations Concerning Alter Ego Liability

Yee agrees that the trial court was correct to find that Fat Noodle 1 was an alter ego of Fat Noodle 2. She argues that the trial court erred in its application of alter ego doctrine in concluding that she had failed to make the requisite showing of alter ego liability as to AdVantage, Saison, Dauntless, Skenes, Fleischman, and Weinberg. We find that the trial court did not err in its alter ego determinations.

" '[T]he conditions under which the corporate entity may be disregarded vary according to the circumstances in each case and the matter is particularly within the province of the trial court. [Citations.] This is because the determination of whether a corporation is an alter ego of an individual is ordinarily a question of fact.' [Citation.] There are two requirements for

---

[4] Because our conclusion does not in any way depend on the scope of the CGL policy issued by USLI, we deny USLI and Yee's respective requests for judicial notice of materials related to that question.

disregarding the corporate entity: first, that there is a sufficient unity of interest and ownership between the corporation and the individual or organization controlling it that the separate personalities of the individual and the corporation no longer exist and, second, that treating the acts as those of the corporation alone will sanction a fraud, promote injustice, or cause an inequitable result. [Citation.] 'Both of these requirements must be found to exist before the corporate existence will be disregarded, and since this determination is primarily one for the trial court and is not a question of law, the conclusion of the trier of fact will not be disturbed if it is supported by substantial evidence.' "[5] (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1071–1072.) "It is the plaintiff's burden to overcome the presumption of the separate existence of the corporate entity." (*Mid-Century Ins. Co. v. Gardner* (1992) 9 Cal.App.4th 1205, 1212.)

Here, substantial evidence supports the conclusion that there was no "sufficient unity of interest and ownership between" Fat Noodle 2 and (with the exception of Fat Noodle 1) the various individuals and legal entities to which Yee sought to ascribe alter ego liability; in every instance, the evidence suggests that "the separate personalities of" those individuals and legal entities endured. (*Misik v. D'Arco*, *supra*, 197 Cal.App.4th at p. 1072.) Such evidence was cited by the trial court in its statement of decision and is not meaningfully disputed in Yee's opening brief. A brief recitation will suffice:

_____

[5] We therefore reject Yee's contention that de novo review is appropriate because the trial court erred as a matter of law by failing "to identify and hold the equitable owners of the Fat Noodle enterprise liable" after it pierced the around that "Fat Noodle enterprise." (Capitalization omitted.) This bit of misdirection depends on Yee's equivocation between Fat Noodle 1 and "the Fat Noodle enterprise." The trial court found that Fat Noodle 1 was an alter ego of the defendant tenant, Fat Noodle 2—not that the entire Fat Noodle enterprise was (in Yee's words) a "sham."

As to Saison, the trial court noted that it was formed in connection with another of Skenes's restaurants, before the development of the Fat Noodle concept, and "capitalized with $2.7 [m]illion [d]ollars." As for AdVantage, Fleischman worked there "on five to seven other restaurant concepts" while the Fat Noodle concept was being developed. And according to Weinberg's testimony, "AdVantage successfully developed other restaurant concepts and opened seven restaurants."[6]

"Dauntless was organized on January 6, 2009, years before the Fat Noodle concept was developed. . . . There is no evidence that its capitalization was inadequate for the business purposes for which it was formed. Nor is there any evidence that it was in dereliction of corporate formalities from the time the lease was executed through December 2015 when [Fat Noodle 2] breached the lease . . . ." Finally, there was no "evidentiary basis for imposing

---

[6] We are unpersuaded by Yee's argument — relying on *Granny Purps, Inc. v. County of Santa Cruz* (2020) 53 Cal.App.5th 1 (*Granny Purps*) — that some of the evidence favoring the suspended companies was illicitly "proffered by the individual defendant principals, who essentially defended AdVantage and Saison through their own defense." To be sure, *Granny Purps* held that a suspended corporation loses all rights and privileges under the law, including the right to prosecute a lawsuit. (*Id*. at p. 10.) But *Granny Purps* did not address the issue raised here: whether, after a plaintiff calls as a witness a person "identified with an adverse" suspended-corporation "party" under Evidence Code section 776, and other parties joined to the lawsuit cross-examine the same person, the trial court may consider that cross-examination testimony when making an alter ego determination as to the suspended corporation. In fact, *Granny Purps* does not deal with testimony *at all* because *Granny Purps* concerns a demurrer. Making matters worse, Yee makes no argument that the trial court erred in admitting the cross-examination testimony and cites no authority with even a tenuous connection to that unargued proposition. "If a party's briefs do not provide legal argument and citation to authority on each point raised, " 'the court may treat it as waived, and pass it without consideration.' " (*People v. Stanley* (1995) 10 Cal.4th 764, 793.) Accordingly, we accept Yee's constructive waiver.

liability on the individual defendants as alter egos of" Fat Noodle 2, Saison, AdVantage, "or Dauntless LLC. There is no evidence that funds of [Fat Noodle 2] or Fat Noodle [1] were used for their personal expenses."

These facts constitute substantial evidence in support of the trial court's alter ego determinations.

## B. The Trial Court Correctly Considered All Alleged Theories of Liability

Yee argues that "the trial court failed to even consider whether AdVantage, Saison, Dauntless and the individual defendants could be liable under" an agency theory of liability. This assertion misrepresents the record.

In footnote 9 of the statement of decision, the trial court observed: "Plaintiff objects that the court 'pierc[ed] the corporate veils of Fat Noodle, LLC and Fat Noodle 2nd (sic) LLC' but failed to address whether the remaining entities and individuals participating in the Fat Noodle enterprise [have] liability' (Plaintiff's objections at 4:8-10.) For the reasons stated below, I considered plaintiff's evidence and specifically find that AdVantage, Saison, Dauntless, Skenes, Fleischman, and Weinberg do not have any liability for tenant's breach of the lease under 'partnership principles' or *any other legal or equitable claim*. (Plaintiff's objections at 4:12-26.) I also considered and reject any argument that AdVantage, Saison, Dauntless, Weinberg, Skenes and Fleischman 'exerted control over the pierced entities. (Plaintiff's objections at 4:26 to 5: 6.)' *Nor is there any evidentiary or legal basis* for the claim that AdVantage and Saison have 'agency liability' as 'the principals who employed Mr. Weinberg to handle the affairs of the Fat Noodle enterprise' (Plaintiff's objections at 5:7-11.)." (Italics added.)

In short, the trial court considered agency liability, but concluded that Yee had failed to meet her burden of producing evidence at trial that would

support that theory. Yee attacks that conclusion, suggesting in effect that, after she objected to the trial court's proposed statement of decision, the trial court was dutybound to make further factual findings supporting its conclusion that there was no "evidentiary . . . basis" for a finding in Yee's favor. We reject that argument. "[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527–1528, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) Applying the applicable standard of review, we reject Yee's argument. The most relevant burden of proof here is Yee's burden as the appellant to demonstrate error on appeal. And upon review of the record, we are satisfied Yee has not met that standard.

### C. No Error Adduced in the Trial Court's Award of Damages

Yee argues that in calculating the amount of property damage, the trial court committed legal error by declining to use "Yee's loss of rent damage calculation," which "included a 50% discount on the rent paid by" the subsequent tenant "in the first two years of the lease . . . for rent concessions necessary due to improvements required to bring the damaged property to commercially usable space again." We disagree.

"For tortious injury to real property, the general rule is that the plaintiff may recover the lesser of (1) the diminution in the property's fair market value, as measured immediately before and immediately after the damage; or (2) the cost to repair the damage and restore the property to its

pretrespass condition, plus the value of any lost use." (*Kelly v. CB&I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 450, disapproved of on another ground by *Scholes v. Lambirth Trucking Co.* (2020) 8 Cal.5th 1094, 1103.)

Yee relies on *Polster, Inc. v. Swing* (1985) 164 Cal.App.3d 427, 431–433 (*Polster*), for the proposition that "reduction in rent is the appropriate measure for property damage when repairs are made by successor tenants," but that reliance is misplaced. The question decided by the *Polster* court was whether the "plaintiff may . . . recover the reasonable cost of making repairs to the premises without actually making the repairs and incurring the attendant expense." (*Id.* at p. 431.) Whether rent concessions made to a subsequent tenant are necessarily identical to that estimated cost of repair, or whether such concessions must be used to calculate damages whenever they are alleged, are not questions the *Polster* court answered.

Consequently, Yee has demonstrated no legal error in the trial court's calculation of damages.

### 3. There Was No Abuse of Discretion in the Trial Court's December 21 Order Concerning Attorney Fees

The trial court's December 21 rulings on attorney fees are the subject of several appeals and cross-appeals.[7] Yee contends that that trial court erred in awarding attorney fees to the other parties, in determining who was the prevailing party for the purposes of an attorney fees award, and in denying

---

[7] USLI, which filed a self-styled respondent's brief in appeal No. A164691 (concerning the December 21 order), maintains that it "is not properly named as a party to [that] appeal . . . ." Inasmuch as USLI is not "named as a party" to appeal No. A164691 *at all*, we agree. So does Yee, who notes that she "did not [so] name USLI in the notice of appeal" or her "opening brief in this appeal." Accordingly, because there *is* no appeal against USLI in No. A164691, there is no basis for granting USLI's request that "the appeal against it in No. A164691 be dismissed."

12

Yee's motion for attorney fees against Weinberg. Skenes and Weinberg both argue that the trial court abused its discretion in reducing their attorney fee awards below the amount for which they moved; that reduction was accomplished by using the hourly rates that were actually paid by USLI, and by awarding only those fees the trial court deemed essential to Skenes and Weinberg's respective defenses. Fleischman, whose counsel did not represent any non-prevailing defendant but whose attorney fees award was similarly reduced, also ascribes error to the trial court's order in that respect. We disagree with all of these contentions.

## A. Yee's Arguments About Attorney Fees

In challenging the December 21 order, Yee makes several arguments which we address in turn.

### i. Civil Code Section 1717 Reciprocity Does Not Invalidate the Award of Attorneys Fees to Defendants Skenes, Weinberg, and Fleischman

Given the August 26 order denying Yee's motion for attorney fees against USLI, which was not a party to the lease, Yee contends that allowing defendants Dauntless, Skenes, Fleischman and Weinberg, who were not parties to the lease to recover attorney fees awards would ultimately reimburse USLI and thereby violate "the reciprocity requirement" of Civil Code section 1717. We assume without deciding that Yee is correct when she argues that this is a purely legal issues subject to de novo review. Even so, we reject the substance of her argument. Section 1717 reciprocity applies in two specifically defined situations: to contracts involving one sided or "unilateral" attorney fee provisions and to prevailing parties who have won by arguing the contract at issue was invalid or inapplicable to them. Section 1717 has not been applied in the broad brush manner that Yee requests, and in fact

13

principles of reciprocity support the court's award of attorney fees as to Dauntless, Skenes, Fleischman and Weinberg.

Section 1717, subdivision (a), provides: "In any action on a contract, where the contract specifically provides that attorney fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney fees in addition to other costs."[8]

As our high court observed in *Santisas v. Goodin* (1998) 17 Cal.4th 599, 610–611 (*Santisas*), "The primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions. [Citation.] Courts have recognized that section 1717 has this effect in at least two distinct situations. The first situation in which section 1717 makes an otherwise unilateral right reciprocal, thereby ensuring mutuality of remedy, is 'when the contract provides the right to one party but not to the other.' " This reciprocity principle does not apply here because the lease provided a right to attorney fees to whichever party was the prevailing party.

The second situation in which section 1717 authorizes an award of attorney fees is "when a person sued on a contract containing a provision for attorney fees to the prevailing party defends the litigation 'by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of

_____

[8] We have already noted that the trial court properly denied Yee's motion for attorney's fees against USLI because USLI was not a party to the lease and, alternatively, because section 1717 by its terms does not award attorney's fees where a party has voluntarily dismissed its case, as USLI did here.

14

the same contract.' " (*Santisas, supra,* 17 Cal.4th 599, 610–611.) This type of reciprocity has no apparent application supporting Yee's claim on appeal. Yee did not prevail on the breach of contract and indemnity claims against Fat Noodle LLC and Fat Noodle 2 by "successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the" lease agreement; to the contrary, Yee prevailed against the Fat Noodle defendants by virtue of the applicability, validity, enforceability, and existence of that contract.[9]

In fact, the trial court correctly applied this second type of reciprocity to award attorney fees to Dauntless, Skenes, Fleischman and Weinberg, who were not parties to the lease, finding that those defendants prevailed on all contract claims by virtue of Yee's failure to prove they were alter egos of Fat Noodle LLC or Fat Noodle 2. The court's finding that Dauntless, Skenes, Fleischman and Weinberg each defeated Yee's alter ego claims qualifies them for an award of reciprocally awardable attorney fees because it demonstrates the "inapplicability, invalidity, unenforceability, or nonexistence of the" lease agreement as to them. Put another way, the award of attorney fees

---

[9] Moreover, there is good reason not to broaden this principle of reciprocity so as to apply to Yee's situation. Plaintiffs are "not entitled to avoid their contractual obligation to pay reasonable attorney fees based on the fortuitous circumstance that they sued a defendant who obtained insurance coverage providing a defense." (*Staples v. Hoefke* (1987) 189 Cal.App.3d 1397, 1410.) Even if that proposition is dicta, as Yee argues, we find it persuasive in its resonance with other settled doctrine: "[A]s our Supreme Court explained in *Lolley v. Campbell* (2002) 28 Cal.4th 367, [373] (*Lolley*), in general, ' " 'awards of attorneys' fees where otherwise authorized are not obviated by the fact that individual plaintiffs are not obligated to compensate their counsel." ' " (*Cell-Crete Corp. v. Federal Ins. Co.* (2022) 82 Cal.App.5th 1090, 1096.) "Instead, as they explained, 'California courts have routinely awarded fees to compensate for legal work performed on behalf of a party pursuant to an attorney-client relationship, although the party did not have a personal obligation to pay for such services out of his or her own assets.' " (*Id.* at pp. 1096–1097, quoting *Lolley*, at p. 373.)

"provide[s] a reciprocal remedy for a non-signatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney fees should he prevail in enforcing the contractual obligation against the defendant." (*Reynolds Metals Co. v. Alperson*, *supra*, 25 Cal.3d at p. 128.) Had Yee proven her claims that Dauntless, Skenes, Fleischman and Weinberg were alter egos of the Fat Noodle defendants, she would have been eligible for awards of attorney fees against them. Because Yee lost those claims, reciprocity supports the trial court's award of attorney fees against her.

**ii. The "Wrong Standard"**

In its order, the trial court rejected Yee's "argument that [it] deny attorneys' fees to Fleischman, Skenes, Weinberg and Dauntless. 'The trial court has no discretion to deny prevailing party status' to a defendant where, as here, 'plaintiff [did] not recover any relief against that defendant.' (*Charton v. Harkey* (2016) 247 Cal.App.4th 730, 737–738.)" In her opening brief, Yee argues that *Charton* dealt not with attorney fees but with costs, for which a different standard determines who is the prevailing party.

However, this contention does not assist Yee on appeal because a trial court's attorney fees order may be affirmed if it is correct on any theory. (*RiverWatch v. County of San Diego Dept. of Environmental Health* (2009) 175 Cal.App.4th 768, 776 [trial court's attorney fee order will be affirmed if correct on any theory even if reasoning is erroneous].) "A trial court is given wide discretion in determining which party has prevailed on a contract," and "[w]e will not disturb such a determination on appeal absent a clear abuse of discretion." (*Ajaxo Inc. v. E\*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 58.) Yee's burden, then, is to show that the trial court had no discretion to deem

those defendants the prevailing parties. Accordingly, we reject Yee's *Charton* argument, by which she cannot make the requisite showing.

### iii. Purported Error in Denying Yee's Motion to Recover Fees from Weinberg and AdVantage, While Granting Fees to Weinberg

Next, Yee argues that the trial court erred in denying Yee's motion for attorney fees against Weinberg and AdVantage, but granting Weinberg's motion against Yee. The basis of that ruling was the trial court's determination that Weinberg and AdVantage were not alter egos of any signatory to the lease and thus, were not bound by the lease's attorney fee provision. As we have already explained, there was no error in the trial court's alter ego determinations and no error in its reasoning denying Yee's motion for attorney fees against USLI. There was no error in granting Weinberg's motion for attorney fees against Yee under the principles of reciprocity discussed above. The court's finding that Yee failed to prove that Weinberg was an alter ego of Fat Noodle LLC or Fat Noodle 2 evidences a successful defense based on the "inapplicability, invalidity, unenforceability, or nonexistence of the" lease agreement as to him and supports the award of attorney fees under subdivision (b)(2) of Civil Code 1717.

### iv. Purported Error in Denying Recovery of Fees from Weinberg

Finally, Yee contends that the trial court should have granted her motion for attorney fees against Weinberg. According to Yee, this is because a "nonsignatory defendant can be liable for attorney fees when acting on behalf of the signatory entity." But an " 'order of a lower court is presumed to be correct on appeal, [with] all intendments and presumptions [being] indulged in favor of its correctness.' " (*Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270, 1274.) Therefore, it is not enough for Yee to show that the trial court *could*

17

have held Weinberg liable for attorney fees; she must also show that the court actually erred in doing otherwise.

None of the cases Yee cites as authority supports that conclusion. *Hom v. Petrou* (2021) 67 Cal.App.5th 459, 471, affirmed a trial court order awarding attorney fees to non-signatory "third-party beneficiaries" of a lease. *Texas Commerce Bank v. Garamendi* (1994) 28 Cal.App.4th 1234, 1246, enforced an attorney fee clause against a non-signatory insurance commissioner who, by operation of statute, stood "in the shoes" of the signatory insurance company with respect to the litigation. And in *Pacific Preferred Properties, Inc. v. Moss* (1999) 71 Cal.App.4th 1456, 1458, the attorney fees provision in question "expressly applie[d] to actions instituted by or against the" named party against whom the provision was enforced. None of these cases compelled the trial court to order the recovery of fees from Weinberg, who was not a third party beneficiary, did not stand in the shoes of Fat Noodle 2 with respect to the underlying litigation, and was not named in the attorney fees provision. Thus, Yee has failed to meet her burden.

## B. The Defendants' Arguments

Skenes, Weinberg, and Fleischman all argue that the trial court erred in reducing the amount of their recoverable attorney fees. These "reductions" were effected by the trial court in two ways: (1) indexing each attorney fee award to the hourly rate actually paid by USLI, instead of a higher "market rate"; and (2) awarding attorney fees for fewer than the number of hours for which each defendant sought to recover. We find no error in either respect.

"An order granting an award of attorney fees is generally reviewed for abuse of discretion. [Citations.] In particular, '[w]ith respect to the *amount* of fees awarded, there is no question our review must be highly deferential to

18

the views of the trial court.' [Citations.] 'An appellate court will interfere with the trial court's determination of the amount of reasonable attorney fees only where there has been a manifest abuse of discretion.' " (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1319–1320.)[10]

### i. The Hourly Rate

The defendants argue that the trial court should have awarded attorney fees based on the "market rate," not the rate actually paid by USLI. We disagree.

"Civil Code section 1717, subdivision (a) provides that where attorney fees are authorized by contract, 'the prevailing party . . . shall be entitled to reasonable attorney fees,' which 'shall be fixed by the court.' 'The trial court has broad discretion to determine the amount of a reasonable fee, and the award of such fees is governed by equitable principles.' [Citation.] In fixing a reasonable fee, the court first computes 'the lodestar figure—a calculation based on the number of hours reasonably expended multiplied by the lawyer's

---

[10] In his discussion of the standard of review, Skenes cites two cases that, in the words of our Fourth District colleagues, "purport to require a more detailed statement of decision when a fee award is substantially reduced." (*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 440, fn. 17 (*569 East County*).) Those cases—*Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44 and *Kerkeles v. City of San Jose* (2015) 243 Cal.App.4th 88—have little relevance here. "In *Gorman*, the court reviewed and reversed an unexplained (and apparently inexplicable) reduction in the fee award," but here, the fee award was explained by the trial court in a detailed, 28-page order. "*Kerkeles* is likewise inapposite, because it involved an award of fees under 42 United States Code section 1988, which arguably requires more detailed explanation for a reduced fee award. (*Kerkeles*, *supra*, at pp. 101–104, citing federal cases and observing '[w]e thus conclude that the reasoning expressed in the court's order *does not meet the federal criterion* of a clear and specific explanation sufficient for meaningful appellate review,' italics added.)" (*569 East County*, at p. 440, fn. 17.)

hourly rate.' (*Ibid.*) Second, the court may adjust the lodestar to ensure that the fee awarded is reasonable in view of various factors, including 'the nature and difficulty of the litigation, the amount of money involved, the skill required and employed to handle the case, the attention given, the success or failure, . . . "necessity for and the nature of the litigation," ' as well as other circumstances of the case. . . . [¶] 'We will reverse a fee award only if there has been a manifest abuse of discretion.' " (*Hill v. Affirmed Housing Group* (2014) 226 Cal.App.4th 1192, 1195–1196.)

Here, at the hearing on the parties' motions for attorney fees, the trial court asked Skenes's counsel if he was aware of any case "where a court was reversed for reimbursing a party at the hourly rates at which that party fees were actually paid by the insurance company." Counsel could point to no such case below, and no party has cited any such case on appeal. In light of the operative standard of review, we decline to make this case the first of its kind in that respect. The trial court acted within its discretion.

**ii. The Compensable Hours**

Weinberg, who was a prevailing party as to the first two causes of action and a non-prevailing party as to the third, was represented by the Stone firm. Stone also represented USLI in intervention for Fat Noodle 2, AdVantage, and (before it was reinstated) Dauntless. Skenes was a prevailing party as to all three causes of action and was represented by the Vogl firm, who also represented USLI in intervention for Fat Noodle 1 and Saison.

"To the extent [a prevailing defendant's] shared counsel engaged in litigation activity on behalf of [a codefendant] for which fees are not recoverable, the [trial] court has broad discretion to apportion fees." (*Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 443.) " 'A court may

20

apportion fees even where the issues are connected, related or intertwined.' " (*Ibid.*) Here, the trial court apportioned fees by reviewing the materials submitted by the parties and determining what work was essential to the respective defenses of Weinberg and Skenes. Hours billed for this work were separated from hours billed for work that was " ' "merely convenient or beneficial" ' " to those individual defendants but more properly attributable to USLI's various interventions. This latter category of non-compensable hours pertained to work which "benefitted" the prevailing defendants, but until the June 21 dismissal of USLI's complaints in intervention, would have been undertaken even if Skenes and Weinberg were not defendants.

Once more, neither Skenes nor Weinberg have cited any authority for the proposition that such apportionment lay beyond the trial court's scope of discretion under the circumstances. They rely on *Hill v. Affirmed Housing Group* (2014) 226 Cal.App.4th 1192, 1195, but that was a case in which the Court of Appeal held that it was within the trial court's discretion not to apportion fees; it does not follow from *Hill* that a trial court *must* not apportion fees under the present circumstances. In short, Skenes and Weinberg have given us no reason to doubt that the trial court acted within its "broad discretion to apportion fees." (*Zintel Holdings, LLC v. McLean*, *supra*, 209 Cal.App.4th at p. 443.)

As for Fleischman, whose counsel represented no one else, the trial court ordered that he "recover for 400 of the 462.70 hours" claimed in his motion for attorney fees. This 14% reduction was based on the trial court's determination that "much of the work billed by" Fleischman's counsel "was not 'reasonably necessary to the conduct of the litigation . . . .' " (*Charton v. Harkey*, *supra*, 247 Cal.App.4th at p. 739.) For example, the trial court opined that the "unsupported alter ego claims against Fleischman could have been

addressed in far fewer hours than those invested by" Fleischman's counsel. "Because the judge who presided over the trial was in the best position to make determinations regarding the reasonableness of the time entries submitted, we find no abuse of discretion in the court's decision to" effect this rather modest reduction in "the fee award. (See *Graciano* [*v. Robinson Ford Sales, Inc.* (2006)] 144 Cal.App.4th [140,] 148.)" (*Cavalry SPV I, LLC v. Watkins* (2019) 36 Cal.App.5th 1070, 1101.)

## DISPOSITION

We affirm: (1) the August 26 order denying Yee's motion for attorney fees as to USLI; (2) the judgment; and (3) the December 21 order ruling on the parties' motions for attorney fees. As to the appeals numbered A163850 and A164131, Yee shall bear costs on appeal; as to appeal number A164691, everyone shall bear their own costs.

HIRAMOTO, J.[*]

WE CONCUR:

STREETER, ACTING P.J.

GOLDMAN, J.

*Yee v. Weinberg et al.* (A163850, A164131, A164691)

_____

[*] Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.